A05A1347. GARIBAY v. THE STATE.
(620 SE2d 424)

ELLINGTON, Judge.

A Douglas County jury found Jesus Garibay guilty of armed robbery, OCGA § 16-8-41; aggravated assault, OCGA § 16-5-21; theft by receiving (motor vehicle), OCGA § 16-8-7; two counts of possession of a firearm during the commission of a crime, OCGA § 16-11-106; reckless driving, OCGA § 40-6-390; and fleeing or attempting to elude a police officer, OCGA § 40-6-395. Following the denial of his motion

for new trial, Garibay appeals, contending the trial court erred in admitting evidence of his gang membership. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows the following. During the night of July 24 and the early morning hours of July 25, 2002, Garibay attended a party at a mobile home owned by Edward Forey. All the attendees, except for Forey's girlfriend, were members of the "Hard Times 13" gang, a Hispanic gang known to sport "13" tattoos and to wear blue gang colors and clothing displaying the number "13." Gang members resided at the trailer and "HT 13" was carved into a tree on the lot where the trailer was located. During the party, Garibay and two other gang members, Edward Nava and Miranda Sanders, decided to go on a "beer run," which the gang members understood to mean stealing beer from a store. Before leaving, Garibay asked Forey for a gun and a black jacket. Forey kept a Ruger Red Hawk .44 Magnum revolver at his trailer for use by the gang's members.

Armed for the beer run, Garibay, Nava and Sanders went to a Douglasville convenience store adjacent to the mobile home park. They drove there in a stolen Toyota Celica and parked behind the store. Sanders waited in the car while Garibay and Nava went inside. Once inside, Garibay grabbed beer from the cooler. He then pointed the revolver at the clerk and demanded money. Nava went behind the counter and collected $111.28 from the store's two registers. When the victim was opening the second register, Nava struck him from behind. Nava told Garibay to shoot the victim, but Garibay did not. After Garibay and Nava fled with the beer and money, the victim called 911.

The store's surveillance camera videotaped the entire incident and the tape was admitted into evidence. Both the victim and Forey identified the individual on the tape that had the gun and who wore the black jacket as Garibay. The tape also showed Nava wearing a blue jersey with a "13" on it. Shortly after the robbery, the manager of the trailer park and another witness saw two Hispanic males running through the park, prompting another 911 call that led police to the trailer park.

When Garibay and Nava returned to the trailer, they bragged about the robbery and shared the beer with the other gang members. They also divided the money between themselves and Forey and returned the gun to Forey.[2]

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

[2] The day after the robbery, Forey gave the gun to an acquaintance in an attempt to keep the police from recovering the weapon. The acquaintance turned the gun over to the police after hearing about the robbery.

Shortly thereafter, Garibay left the party to get drugs. Carlos Aguirre, another member of the gang, went with him in the stolen Celica. Like Nava, Aguirre wore a jersey with "13" on it.

In the meantime, police officers responding to the 911 calls used dogs to track the robbers' scent from the store to the mobile home park. As Garibay and Aguirre tried to leave the trailer park, the police tried to stop them at the exit. Instead of stopping, however, they fled, leading the police on a high speed chase down Interstate 20. The police captured Garibay and Aguirre after forcing their car off the road. The police recovered $50 from Garibay's pockets when they searched him. They also discovered that Garibay and Aguirre had the number 13 tattooed on their bodies.

A search of the trailer revealed the "13" jersey worn by Nava during the robbery. Nava was later apprehended in Las Vegas, Nevada.

Garibay and Nava were tried together and Garibay was convicted on all counts. Prior to trial, the trial court denied Garibay's motion in limine to exclude any evidence of gang affiliation. On appeal, Garibay contends evidence of gang membership was prejudicial, irrelevant, and constituted inadmissible character evidence. We disagree. The evidence was admissible both as part of the res gestae of the crime and to show motive.

"The State is entitled to present evidence of the entire res gestae of a crime. This is so even if the defendant's character is incidentally placed in issue." (Citations omitted.) *Corza v. State*, 273 Ga. 164, 166 (2) (539 SE2d 149) (2000). "Surrounding circumstances constituting part of the res gestae may always be shown to the jury along with the principal fact, and their admissibility is within the discretion of the trial court. . . . The fact that such part of the res gestae incidentally placed [Garibay's] character in issue does not render it inadmissible." (Citation omitted.) *Veal v. State*, 242 Ga. App. 873, 875 (3) (531 SE2d 422) (2000).

Because these gang-related markings explained the circumstances surrounding the commission of the crimes, the trial court did not err in admitting them. In the instant case, Nava wore a jersey with the number 13 on it while committing the crime, and Aguirre had a similar one on when he was arrested. Garibay, who bore a "13" tattoo, also shared the proceeds of his crime with Forey, who operated out of a residence marked with the number "13." The state was entitled to present these circumstances to the jury, regardless of whether they implicated Garibay's character.

Further, the gang markings alone serve to enlighten the jury as to Garibay's motive in committing the crime. As we have held, the admission of such evidence, even if it incidentally places a defendant's character in issue, "is a matter resting largely within the sound

discretion of the trial court, and appellate courts will not interfere absent an abuse of discretion." (Citation omitted.) *Lewis v. Uselton*, 224 Ga. App. 428, 431 (8) (480 SE2d 856) (1997).

> It was not error for the trial court to overrule [Garibay's] motion in limine to exclude gang evidence on the basis that such evidence improperly placed his character in issue. Whether to admit evidence is a matter resting in the trial court's sound discretion, and evidence that is relevant and material to an issue in the case is not rendered inadmissible because it incidentally places the defendant's character in issue. Evidence of gang membership or involvement is admissible to show motive.

(Citations omitted.) *Edge v. State*, 275 Ga. 311, 312-313 (3) (567 SE2d 1) (2002). "When that motive directly involves [one's] membership in an unsavory group, the relevant and material evidence does not become inadmissible because it may incidentally put appellant['s] character or reputation into evidence." (Citations omitted.) *Clark v. State*, 271 Ga. 6, 9 (4) (515 SE2d 155) (1999); see also *Maxwell v. State*, 267 Ga. App. 227, 230 (3) (599 SE2d 228) (2004) (accord).

Here, gang membership was key to explaining Garibay's motive for participating in the crimes. The jury was authorized to find that Garibay committed the armed robbery while making a "beer run," which the gang understood to mean stealing beer for the gang. Garibay did, in fact, share the beer with gang members, at a gang party, at a gang home marked with the number "13." Further, Garibay carried out the robbery with a fellow gang member, using a "gang gun" and both bore the marks of gang affiliation, a "13" tattoo and a "13" jersey. Based on this evidence, the jury could infer the armed robbery was committed in furtherance of the gang.

Additionally, Garibay argues the State should have indicted him under OCGA § 16-15-4,[3] participation in criminal street gang activity, before the admission of evidence of gang affiliation would be relevant. However, "[t]here is no requirement that the State charge a defendant with violating the prohibition of participation in criminal street gang activity in OCGA § 16-15-4 in order to admit otherwise relevant evidence of gang activity." (Citations omitted.) *Wolfe v. State*, 273 Ga. 670, 674 (4) (c) (544 SE2d 148) (2001).

---

[3] Presumably Garibay meant OCGA § 16-15-4, though his brief cites OCGA § 16-13-4 ("Approval by Food and Drug Administration as prerequisite to sale of controlled substances and dangerous drugs").

Garibay also argues the court abused its discretion by admitting the testimony of the Cobb County Anti-Gang officer who testified about the "Hard Times 13" gang, its use of the number 13, and the colors and tattoos associated with the gang. This Court has held that evidence explaining gang culture can be "material to informing the jury of all circumstances surrounding the crime charged, including . . . motivation[, and] we cannot say the trial court abused its discretion in admitting this evidence." *Cyrus v. State*, 231 Ga. App. 71, 72-73 (2) (498 SE2d 554) (1998); *Warren v. State*, 233 Ga. App. 699, 700 (2) (505 SE2d 777) (1998). Given that the gang evidence was relevant and properly admitted under these theories, the court properly admitted this testimony. For all these reasons, the trial court did not err in admitting evidence of Garibay's gang affiliation.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED AUGUST 17, 2005.

*Mary Erickson*, for appellant.
*David McDade, District Attorney, Brian K. Fortner, Assistant District Attorney*, for appellee.