S05A2051. WILLOUGHBY v. THE STATE.
(626 SE2d 112)

THOMPSON, Justice.

Defendant Maraleto Willoughby was convicted of murder, armed robbery, aggravated assault, burglary, and violation of OCGA § 16-11-106 (possession of a knife in the commission of a felony).[1] He

---

[1] The crimes were committed on August 10, 1998. The grand jury indicted defendant and Terrance Acliese on September 29, 1998, and charged them with murder, felony murder (three counts), armed robbery, aggravated assault, burglary (two counts) and violation of OCGA § 16-11-106, in connection with the death of Eric Herndon. Defendant's trial began on June 22,

appeals, enumerating error upon the general grounds, the refusal to suppress two statements that defendant made to police, and an evidentiary ruling. We find no error and affirm.

Defendant, along with Terrance Acliese, Anthony Pullins, and a fourth man, named Tim, went to the Marquette Club.[2] On the way, defendant and Acliese talked about robbing someone to get some money. At the club, defendant and Acliese met the victim, Eric Herndon. Later, defendant and Acliese drove Herndon home, where they beat him and fatally stabbed him in the neck and chest. When defendant and Acliese left Herndon's apartment, they took some of Herndon's belongings with them, including a VCR and boom box. Later, defendant and Acliese went back to the club to pick up Pullins and Tim. Pullins noticed a "radio"[3] in the back of the car and a bloody towel. He also noticed "a lot of blood" on Acliese and specks of blood on defendant. Acliese and defendant showed Pullins how they killed Herndon; they were excited and laughing loudly. Later, defendant, who was the self-proclaimed leader of a fledgling gang (the "Mafia Mob Family"), which included Acliese and Pullins, conducted a gang ceremony in which he "blessed" Acliese to give him a higher gang rank.

1. The evidence is sufficient to enable any rational trier of fact to find defendant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The fact that physical evidence of the crimes was found in the possession of Acliese, but not in the possession of defendant, is of no consequence.

2. Defendant gave four statements to Detective Zimbrick. Defendant asserts that the first two of these statements should have been suppressed because they were made at the police station without *Miranda* warnings. We cannot agree.

The first statement was made on August 20, 1998, ten days after the murder.[4] At that time, Detective Zimbrick was searching for another individual when he happened upon defendant and asked him

---

2000, and ended on June 28, when the jury returned a verdict of guilty on all counts. The trial court sentenced defendant to life for murder, life for armed robbery, twenty years for aggravated assault, ten years for burglary, and five years for violating OCGA § 16-11-106. (All sentences were to run consecutively.) The other convictions (three counts of felony murder and one count of burglary with intent to commit murder) were vacated by the trial court. Defendant's timely filed motion for a new trial was denied on March 5, 2003. Defendant filed a notice of appeal on March 28, 2003. The case was docketed in this Court on August 22, 2005, and submitted for decision on the briefs on October 11, 2005.

[2] Defendant is also known as "Silk" or "Lunatic"; Acliese is also known as "Suicide."

[3] According to Pullins, the "radio" was approximately one foot high and two feet long.

[4] In that statement, defendant said that Acliese told him he killed someone he met at a club by stabbing him 30 or 40 times and slashing his throat from different sides. When asked if he witnessed the murder, defendant responded negatively.

if he had any knowledge of the victim's murder. When defendant replied affirmatively, the detective asked defendant if he would accompany him to the police station for a formal interview. Defendant voluntarily agreed to accompany the detective. At that time, defendant was not a suspect; he was not under arrest and was free to leave. Upon the completion of the interview, Detective Zimbrick drove defendant home. The second statement was made four days later when the detective asked defendant to clarify some points made in the previous interview.[5] Defendant was still considered to be only a witness at that time. Again, he was free to leave the station at any time and he did so at the conclusion of the interview.

Under these facts, the trial court was authorized to find that, even though defendant was being interviewed in a police station, he was not subjected to a custodial interrogation, and that, therefore, *Miranda* warnings were not required. *Leach v. State*, 259 Ga. 33, 35 (4) (376 SE2d 667) (1989); *Gulley v. State*, 197 Ga. App. 131 (397 SE2d 609) (1990). Accordingly, it was not error to refuse to suppress defendant's first two statements.

3. Evidence of gang activity is admissible to show motive even if it incidentally puts defendant's character in evidence. *Edge v. State*, 275 Ga. 311 (3) (567 SE2d 1) (2002); *Garibay v. State*, 275 Ga. App. 170, 173 (620 SE2d 424) (2005). Thus, it cannot be said that the trial court erred in permitting the State to introduce evidence that defendant was the leader of the "Mafia Mob Family"; that gang members could advance in rank by committing crimes; that the gang enacted rituals to elevate members in the gang hierarchy; and that defendant elevated Acliese shortly after the victim was murdered.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 30, 2006.

*Victor A. McLemore,* for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Thurbert E. Baker, Attorney General, Edwina M. Watkins, Assistant Attorney General*, for appellee.

---

[5] In the second statement, defendant told the detective that Acliese spoke about the murder "every other day"; that Acliese did not say if anyone else was involved; and that Acliese pawned a VCR which belonged to the victim.