## S13A0954. DIXON v. THE STATE.
### (751 SE2d 69)

HINES, Presiding Justice.

Jarmarvis Dixon appeals from his convictions and sentences for the malice murder of Thomas Vinson, and other crimes associated with that killing. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Vinson was working on a rental house he owned. On the evening of December 22, 2006, Dixon and Ronregus Watts were walking on the sidewalk along the street on which Vinson's rental house was located, and the two men approached Vinson near the door to the house. The men asked Vinson for directions, and one of them struck Vinson on the head with a pistol; the other man covered Vinson's mouth with his hand. The men forced Vinson to relinquish his wallet, cell phone, and keys. One man went to Vinson's pickup truck, started it, and maneuvered the truck out of the carport; the other man took Vinson inside the house and shot him.

Susan Mercer, a neighbor who lived down the street from Vinson's rental house, was driving home that evening and noticed two men walking down the street; when Mercer pulled into her driveway and turned off her car, one of the men stood behind it. Suspicious, Mercer started her car again, backed it out of the driveway, drove away, and used her cell phone to call her husband. After relating the incident to him, he told her to return to their house and that Ken Allen, their neighbor who lived across the street, would assist her. After she arrived back at the house, Allen, having been telephoned by Mercer's husband, arrived on foot; Mercer pointed out to Allen two

---

[1] Vinson was killed on December 22, 2006. On March 27, 2007, a Fulton County grand jury indicted Dixon and Ronregus Watts for malice murder, felony murder while in the commission of aggravated assault, felony murder while in the commission of armed robbery, felony murder while in the commission of burglary, armed robbery, burglary, hijacking a motor vehicle, possession of a firearm during the commission of a felony, transaction card theft, two counts of transaction card fraud, and two counts of aggravated assault; Dixon was also charged with possession of a firearm by a convicted felon. Dixon was tried before a jury April 7-14, 2008, and found guilty of all charges except possession of a firearm by a convicted felon, which had not been presented to the jury and was placed on the dead docket. On April 28, 2008, Dixon was sentenced to life in prison for malice murder, 20 years in prison for hijacking a motor vehicle, 20 years in prison for one of the counts of aggravated assault, five years in prison for possession of a firearm during the commission of a felony, three years in prison for transaction card theft, and three years in prison for each count of transaction card fraud, all to be served consecutively; the remaining guilty verdicts were either vacated by operation of law or merged with crimes for which sentence was entered. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Dixon moved for a new trial on April 25, 2008, amended the motion on May 12, 2008, amended it again on April 20, 2009, yet again on June 16, 2011, and amended it a final time on April 20, 2012; the motion was denied on January 25, 2013. On February 8, 2013, Dixon filed a notice of appeal; the appeal was docketed in this Court for the April 2013 term and submitted for decision on the briefs.

men down the street, and Allen escorted Mercer into her house. Allen then went to his vehicle, drove down the street, and saw two men leaning against the porch railing at Vinson's house; Vinson's truck was in the carport of the house, but Allen did not see Vinson. Allen turned his vehicle around, and as he approached Vinson's house, he saw Vinson's truck in the street with one man in the driver's seat; Allen heard a loud noise "like a two-by-four hitting against the cement," and a man ran from the house and jumped through the passenger's side door of Vinson's truck, which was then driven away. Allen followed the truck for a brief time and then placed a telephone call to emergency services and reported the truck as a stolen vehicle. Allen returned to Vinson's house where he noticed blood in the carport, leading to the door of the house. Allen entered the house, found Vinson's body in the first room, and was shortly joined by responding police officers. Vinson had been killed by a bullet, fired at close range, that entered his skull above his right eye; he also had multiple lacerations on his scalp.

A few days later, Dixon told his cousin, Shameka Neely, that he "got some money" from "some dude" and produced Vinson's obituary from his pocket. Dixon told Neely that he and Watts had killed Vinson, and showed her Vinson's credit card that he and Watts had used to purchase items at a local grocery store. Dixon and Watts later returned to the same grocery store and tried to use the card again, but law enforcement officers were called and arrested them; Dixon had Vinson's credit card in his possession,[2] and clothing Dixon was wearing had DNA on it that matched that of Vinson.

1. On January 2, 2007, while Dixon was in custody, Neely contacted Detective Redding and told him that Dixon wanted the law enforcement investigators to know that he did not shoot Vinson; Neely also said that Dixon would talk to Redding if he went to the jail to speak with him. The next day, January 3, 2007, Redding went to the jail, told Dixon that he had spoken with Neely and that Neely said Dixon wished to speak with him, and asked Dixon whether he, in fact, wished to speak with him. Dixon responded by asking whether "he" — presumably Watts — gave a statement implicating Dixon. Redding repeated his inquiry as to whether Dixon wished to speak with him, and received a similar reply; Redding continued to ask if Dixon wished to speak with him, and Dixon protested that Redding was not answering his questions. Redding then informed Dixon that he would answer Dixon's questions, but that first, Dixon must be informed of

---

[2] Vinson's wallet was recovered from a trash can by a worker at a car wash.

his rights. Redding read Dixon the *Miranda*[3] warnings, and Dixon waived his rights and agreed to talk with the detective.[4]

Dixon moved to exclude evidence of the January 3, 2007 interview, contending that it was conducted in violation of what he claims was a previously-invoked right to counsel. However, Dixon points to nothing in the record that shows he had previously invoked his Fifth Amendment right to have counsel present during custodial interrogation. Thus, nothing supports any claim that the January 3, 2007 waiver of the right to have counsel present during the interview was "insufficient to justify police-initiated interrogation [under *Edwards v. Arizona*, 451 U. S. 477, 484-485 (II) (101 SCt 1880, 68 LE2d 378) (1981)]." *Sosniak v. State*, 287 Ga. 279, 285 (1) (B) (695 SE2d 604) (2010). The fact that counsel was appointed for Dixon at a prior appearance before the trial court does not afford him relief under the Sixth Amendment in this circumstance. See *Montejo v. Louisiana*, 556 U. S. 778 (129 SCt 2079, 173 LE2d 955) (2009); *Sosniak*, supra at n. 2. In any event, even assuming that Dixon had invoked his right to counsel prior to the January 3, 2007 interview, "an accused may waive the previously-invoked right [to counsel] by initiating further communication with the police." *Tesfaye v. State*, 275 Ga. 439, 441 (2) (569 SE2d 849) (2002) (Citations omitted.) And, the initiation of such communication can be done through a third person. See *Borders v. State*, 270 Ga. 804, 809 (3) (514 SE2d 14) (1999). See also *Harvell v. State*, 275 Ga. 129, 130 (2) (562 SE2d 180) (2002). Evidence supported the trial court's determination that the interview of January 3, 2007 was at Dixon's instigation, and it was not error to refuse to suppress the statements Dixon made during that interview. See *Stokes v. State*, 281 Ga. 825, 831 (6) (642 SE2d 82) (2007).[5]

2. Dixon contends that his trial counsel failed to provide effective representation. In order to prevail on this claim, he must show both

---

[3] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[4] Dixon told Redding that: he and Watts were walking along a street; Watts inquired if Dixon wanted to rob Vinson; Dixon accompanied Watts to Vinson's home; Watts asked Vinson for directions, and then struck Vinson on the head with a pistol; Dixon covered Vinson's mouth to prevent him from screaming; Watts directed Vinson to relinquish his wallet and the keys to his pickup truck to Dixon, which he did; Dixon went to the pickup truck, started it, and drove it out of the driveway, and then got into the passenger seat; Watts took Vinson into the house; Dixon heard a gunshot, but did not know if Watts shot Vinson, or perhaps fired a shot from the pistol and Vinson had a heart attack; Watts exited the house, got into the driver's seat of the truck, and drove away; Vinson's cell phone was disposed of in a sewer grate; and the men abandoned the truck. At a later point in the interview, Dixon admitted that it was he who drove the truck away from the crime scene.

[5] Accordingly, there is no merit to Dixon's argument that information obtained during this interview, specifically, the location of Vinson's stolen cell phone, must be suppressed as "fruit of the poisonous tree." See *Vergara v. State*, 283 Ga. 175, 182-183 (2) (657 SE2d 863) (2008).

that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

During its opening statement, the State referred to a statement Neely made to investigating officers and said: "And the clincher, she asked [Dixon], 'Do you have a conscience?' And he said 'No.' " Dixon's counsel did not object at the time, but later opined that he should have, contending that this portion of the State's discussion of Neely's statement constituted an impermissible comment upon Dixon's character. Although counsel did not object during the State's opening statement, he did move to exclude this portion of Neely's statement from evidence, which the trial court denied.

Dixon contends that counsel was ineffective in not objecting to the remark during the State's opening statement. To the extent that Dixon asserts that evidence of the remark was admitted as a result of counsel's failure to object during the State's opening statement, he misconstrues the trial court's ruling. Dixon moved to exclude evidence of Neely's remark from trial, and in denying the motion, the trial court ruled on the merits of Dixon's argument; it did not base its ruling on the failure of counsel to object during the opening statement. And, in any event, both before opening statements and after closing arguments, the trial court instructed the jury that what counsel said during opening statements was not to be considered as evidence, and thus, "even if it was error for [Dixon's] counsel not to object, there is no reasonable likelihood that the outcome of the trial would have been different if he had objected." *Simmons v. State*, 291 Ga. 705, 714 (10) (d) (733 SE2d 280) (2012).

3. Finally, Dixon contends that the evidence was insufficient to authorize the jury to find him guilty of malice murder or possession of a firearm during the commission of a crime. "When this Court

reviews the sufficiency of the evidence, it does not re-weigh the evidence or resolve conflicts in witness testimony, but instead it defers to the jury's assessment of the weight and credibility of the evidence. [Cit.]" *Greeson v. State*, 287 Ga. 764, 765 (700 SE2d 344) (2010).

Dixon argues that, as Allen saw one man in Vinson's truck and one man exiting Vinson's house, and as Dixon's version of the events given to Detective Redding placed himself in the truck at the time of the shooting and was unrebutted, the evidence requires the conclusion that Watts shot Vinson while Dixon was in the truck. Even if his characterization of the evidence were correct, it would not mean that the jury was not authorized to find him guilty of malice murder and possession of a firearm during the commission of a felony. The jury was instructed on the law of parties to a crime.

A party to a crime is one who intentionally aids or abets the commission of the crime, or intentionally advises, encourages, hires, counsels, or procures another to commit the crime. OCGA § 16-2-20 (b) (3) & (4). "Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before, during, and after the crime." (Citation and punctuation omitted.) [Cit.]

*Conway v. State*, 281 Ga. 685, 687 (1) (642 SE2d 673) (2007). Although Dixon asserts that there is no evidence that he shared any criminal intent to kill Vinson, or approved of the killing after it was completed, that is not the case. Even crediting Dixon's own version of events as given to Detective Redding, Dixon agreed with Watts to rob Vinson, and when Watts struck Vinson with a pistol, Dixon helped silence Vinson and arrange the departure from the scene, even though he heard Watts fire a gunshot. And, the jury was not required to credit Dixon's version of events, or his denial of intent. See *Stahl v. State*, 284 Ga. 316, 319 (669 SE2d 655) (2008). Also, Allen testified that when he first drove past Vinson's house, two men, but not Vinson, were outside, and Vinson's truck was in the carport, but that when Allen returned a short time later, the truck was on the street with the man in the truck opening the passenger door for the other man who ran from Vinson's house after a loud noise; from this testimony, the jury could infer that the men had conferred about what to do with Vinson, who was at the time incapacitated in his house, and resolved to kill him with the pistol and escape in the stolen truck.

Further, even though Dixon contends that he did not intend that Vinson be killed, criminal intent may be inferred from a person's conduct before, during, and after the commission of the crime,

*Williams v. State*, 262 Ga. 677 (1) (424 SE2d 624) (1993), and Dixon's behavior after the killing showed such intent. He carried a copy of Vinson's obituary with him and when Neely asked where he had gotten money, he told her "from a dude" and showed her the obituary; he also showed her Vinson's credit card and told her that he and Watts had used the credit card after Vinson's death. Neely also testified that when she asked Dixon what he had done on a certain Friday evening, he told her that "they killed somebody." From the evidence, the jury could properly find that he was not merely present at the scene when Vinson was murdered with a pistol, but that he was a party to the crimes. See *Parks v. State*, 272 Ga. 353, 354 (529 SE2d 127) (2000). The evidence was sufficient to enable a rational trier of fact to find Dixon guilty beyond a reasonable doubt of malice murder and possession of a firearm during the commission of a felony, as well as all of the other crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 4, 2013.

*Chaunda Brock*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Christopher M. Quinn, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General*, for appellee.