In the Supreme Court of Georgia

Decided: February 8, 2016

S15A1595. FINLEY v. THE STATE.

BLACKWELL, Justice.

Henry "Trey" Finley was tried by a Douglas County jury and convicted of murder and conspiracy to commit armed robbery in connection with the fatal shooting of Javarus Dupree. Finley contends that the trial court erred when it admitted evidence that Finley was involved in a gang and when it admitted evidence of a custodial statement given by Finley. We see no error and affirm.[1]

---

[1] Dupree was killed on May 11, 2010. Finley and co-defendants Christopher Cushenberry, James Jordan, and Brandon Taylor were indicted on January 13, 2012 and charged with malice murder, three counts of felony murder, and one count each of conspiracy to commit armed robbery, attempted armed robbery, and conspiracy to violate the Georgia Controlled Substances Act. Taylor and Finley were tried jointly, beginning on February 20, 2012. The jury returned its verdict on March 12, 2012, and it found Taylor and Finley guilty of two counts of felony murder, conspiracy to commit armed robbery, and attempted armed robbery, and it acquitted them of the other charges. Finley was sentenced on April 18, 2012 to imprisonment for life for felony murder and a consecutive term of imprisonment for ten years for conspiracy to commit armed robbery. The trial court did not sentence Finley for the other count of felony murder, and it merged the attempted armed robbery with the conspiracy to commit armed robbery for which Finley was sentenced. See Malcolm v. State, 263 Ga. 369, 371–372 (4–5) (434 SE2d 479) (1993); see also Dean v. State, 273 Ga. 806, n. 1 (546 SE2d 499) (2001). Finley timely filed a motion for new trial on the same day that he was sentenced, and he amended it on December 27, 2013. The trial court denied his motion on June 13, 2014. Finley then timely filed his notice of appeal on June 23, 2014, and the case

1. Viewed in the light most favorable to the verdict, the evidence shows that, on the afternoon of May 11, 2010, James Jordan shot and killed Javarus Dupree while Dupree's car was parked outside the poolhouse of the Arbor Station neighborhood in Douglasville. Jordan's accomplice, Brandon Taylor, accidentally dropped a cell phone on the front passenger side of Dupree's car, and police officers later discovered evidence of numerous phone calls in the hours before the murder among the victim and four men: Finley, Jordan, Taylor, and Christopher "Doo-Wop" Cushenberry.

Further investigation revealed that, on the night before Dupree was killed, Finley and his long-time friend Cushenberry — both of whom were unemployed — "blew all their money" at a party. Several people reported that Finley and Cushenberry were planning to "goon[] out" and "hit some licks" — both slang terms for committing a robbery — so that they could continue partying the next day. Dupree, who was known to be making money both as a seller of marijuana and by working at a restaurant, was specifically mentioned as a target for a robbery, and Finley placed a call to Dupree to arrange a "buy."

was docketed in this Court for the September 2015 term and submitted for decision on the briefs.

The next day, Finley got a ride to the home of Cushenberry's mother, where he and Cushenberry met up with Jordan and Taylor. Jordan allowed Finley to drive his Cadillac, and Finley took the men to a location near a gas station at which they had arranged to meet Dupree. When Dupree called and said that he was nearby, Jordan and Taylor exited the Cadillac and got into Dupree's car. Meanwhile, Finley drove Jordan's Cadillac to Arbor Station, where he and Cushenberry waited for the robbery to take place. Several witnesses observed Dupree's car pull into the parking lot by the Arbor Station poolhouse, heard a single gunshot, and saw Jordan and Taylor run out of the car and in the direction of the portion of the apartment complex where Finley and Cushenberry were waiting for them. Jordan and Taylor met up with Finley and Cushenberry a short time later, and Finley's father drove the four men to the mall. Dupree, who had been shot in the head, died the next day.

Finley does not dispute that the evidence is sufficient to sustain his convictions. Nevertheless, we have independently reviewed the record with an eye toward the legal sufficiency of the evidence. We conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Finley was guilty of the crimes of which he was

convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); Powell v. State, 291 Ga. 743, 744 (1) (733 SE2d 294) (2012) ("[a] person who does not directly commit a crime may be convicted upon proof that a crime was committed and that person was a party to it") (citations and punctuation omitted). See also OCGA § 16–2–20 (b) (defining parties to a crime).

2. Finley claims that the trial court erred when it admitted evidence that tended to show he was involved in a gang.[2] This evidence included tattoos, photographs of rap albums, social media postings, and drawings that Finley had apparently made on his shoes. It is within the trial court's sound discretion to determine whether to admit evidence, however, and evidence that is relevant and material to an issue in the case is not rendered inadmissible "because it incidentally places the defendant's character in issue." Thomas v. State, 293 Ga. 829, 833 (4) (750 SE2d 297) (2013). Here, evidence that Finley, Cushenberry, Jordan, and Taylor were all involved in a gang was relevant to show the affiliation between the four men and explain the motive of the principals in

_____

[2] Because Finley's trial took place in 2012, he was tried under our old Evidence Code. See Ga. L. 2011, pp. 99, 214, § 101.

committing the crimes. The jury could infer that Jordan and Taylor were willing to commit crimes that had been orchestrated by Finley and Cushenberry — and that allowed the unemployed Finley and Cushenberry to continue their weekend of "partying" by living off the spoils of crimes directly committed by Jordan and Taylor — because they all were affiliated with the same gang. It is well established that involvement with a gang may be admissible to show motive, see Mallory v. State, 271 Ga. 150, 153 (6) (517 SE2d 155) (1999), and evidence of gang involvement in this case supported the State's theory of how the co-indictees were affiliated and what motivated them to commit the crimes in the way that they did. As a result, the trial court did not err when it admitted evidence of gang involvement. See Willoughby v. State, 280 Ga. 176, 178 (3) (626 SE2d 112) (2006).

3. Finley also claims that the trial court erred when it admitted evidence of a custodial statement that he gave after his arrest. According to Finley, a statement made by a police detective during the interview — that "[y]our quickest way to get [to see your children] . . . or your quickest way to take a large load off your shoulders, is just to tell the truth" — was an improper promise of benefit because it implied that Finley would receive a shorter

sentence (and thereby see his children) if he admitted his involvement in the crimes. See former OCGA § 24-3-50 (confession is inadmissible if it was "induced by another by the slightest hope of benefit").[3] We disagree.

This Court consistently has held that the statutory reference to "the slightest hope of benefit" means promises of "reduced criminal punishment — a shorter sentence, lesser charges, or no charges at all." Brown v. State, 290 Ga. 865, 869 (2) (b) (725 SE2d 320) (2012). It does not include promises of "collateral benefits" that do not relate to charges or sentencing. Id. When a trial court rules on the admissibility of a statement that was allegedly induced by the hope of reduced punishment, the trial court must determine, under the totality of the circumstances, whether the statement was made freely and voluntarily, and its factual finding on this issue must be upheld unless it is clearly erroneous. See Vergara v. State, 283 Ga. 175, 177 and 181 (1) (657 SE2d 863) (2008).

We have reviewed the recording of the interview in question and conclude that it supports the trial court's finding that Finley's statement was not given as a result of any promise of reduced criminal punishment. Even after the detective

---

[3] A substantially identical statute is contained in the new Evidence Code at OCGA § 24-8-824.

spoke of the "quickest way" for Finley to see his children — almost an hour into the interview — Finley continued to deny any involvement in the crimes until finally asking to call his mother over two hours into the interview. Moreover, Finley showed no indication that he interpreted the detective's statement as an offer of reduced punishment. He continued to ask the detective for a "deal" even after the statement was made, and those requests included questions about whether there was "any way of out of this," if there was "anything [he] could do" to reduce the charges, if his sentence would change if he pled guilty, and if he could "set people up." The detective repeatedly told Finley that he could not make a deal with him and that he did not know what effect a guilty plea would have, and a second detective told Finley that only a jury could set him free. Because the record supports the trial court's finding that, under the totality of the circumstances, Finley's statement was not induced by a promise of reduced criminal punishment, this enumeration of error has no merit.

Judgment affirmed. All the Justices concur.