304 Ga. 41
FINAL COPY

S18A0619. TAYLOR v. THE STATE.

BENHAM, Justice.

Brandon Lamar Taylor and his three co-indictees (Henry Grady Finley III, James Jordan, and Christopher Cushenberry) were charged with malice murder, three counts of felony murder, and other offenses arising out of the shooting death of Javarus Dupree. Taylor was tried jointly with Henry Grady Finley, whose convictions have already been affirmed.[1] The jury found Taylor guilty of two counts of felony murder (predicated on criminal attempt to commit armed robbery and on conspiracy to commit armed robbery), as well as the underlying predicate crimes to those felony murder charges. The evidence showed that Finley and Cushenberry had run out of money and needed more to continue their weekend of partying. They pursued a plan to entice the victim, a known drug dealer, to meet them at a certain place so they

---

[1] See *Finley v. State*, 298 Ga. 451 (782 SE2d 651) (2016). The conviction of co-indictee Christopher Cushenberry, who was tried separately, was also affirmed. See *Cushenberry v. State*, 300 Ga. 190 (794 SE2d 165) (2016).

could rob him. Appellant joined the other three co-indictees when they met up with the victim under the ruse of setting up a "buy." During the attempted robbery, Jordan shot the victim in the head, resulting in his death. The trial court denied appellant's motion for new trial, and he appeals.[2]

1.    Appellant challenges the sufficiency of the evidence to support the convictions, and he claims he was entitled to a directed verdict of acquittal, as he requested at trial. A summary of the evidence presented at trial, viewed in the light most favorable to the guilty verdicts returned against co-defendant Finley, was set forth in this Court's opinion affirming Finley's conviction. See

[2] The crimes occurred on May 11, 2010. On January 13, 2012, a Douglas County grand jury returned an indictment charging appellant with malice murder and three counts of felony murder (predicated on criminal attempt to commit armed robbery, conspiracy to commit armed robbery, and conspiracy to violate the Georgia Controlled Substances Act), along with conspiracy to commit armed robbery, attempted armed robbery, and conspiracy to violate the Georgia Controlled Substances Act. Following a jury trial conducted from February 20, 2012 through March 12, 2012, the jury returned a guilty verdict on two counts of felony murder, conspiracy to commit armed robbery, and attempt to commit armed robbery. The jury acquitted appellant of the other charges. By order dated April 18, 2012, appellant was sentenced to life imprisonment without the possibility of parole for felony murder (conspiracy to commit armed robbery) and a consecutive sentence of ten years imprisonment for conspiracy to commit armed robbery. This constitutes a sentencing error, in that the underlying felony of conspiracy to commit armed robbery (Count 5 of the indictment) should have merged with the felony murder guilty verdict predicated on that offense. See Division 7 of this opinion. The remaining felony murder guilty verdict was vacated as a matter of law. Appellant filed a timely motion for new trial on May 9, 2012, which was later amended. Following a hearing, the trial court denied the motion for new trial. Appellant filed a timely notice of appeal, and this case was docketed to the term of court commencing in December 2017. The case was submitted for decision on the briefs.

*Finley v. State*, 298 Ga. 451, 452-453 (1) (782 SE2d 651) (2016).  Viewed in the light most favorable to the guilty verdict returned against appellant, the evidence shows, as noted above, that Finley and Cushenberry launched a plan to rob a drug dealer to fund another night of partying.  At about 3:00 p.m. on the day of the shooting, appellant got a ride with Finley to Cushenberry's house where the three men met up with Jordan.  Although appellant testified at trial and denied knowing about a robbery plan, the victim's cell phone records showed multiple phone calls between the victim and Jordan during the 45 minutes prior to the shooting, during which time appellant was with Jordan and the other men.  After Finley contacted the victim to arrange a meeting, Finley drove the men to a gas station where appellant bought cigars.  When the men learned the victim was nearby, appellant and Jordan exited the car and commenced walking.  The victim picked them up in his car, and the three men proceeded to the parking lot just outside the pool house in a Douglasville neighborhood near Finley's apartment.  Meanwhile, Finley and Cushenberry had driven Jordan's car to Finley's apartment to wait for the robbery to take place.  At around 4:00 p.m., witnesses testified they heard a single gunshot and then saw two men jump out of the victim's car and run in the direction of the area where Finley and Cushenberry were waiting.  Shortly thereafter, the four

men met up at Finley's apartment. The victim was found shot in the head inside his car, and he died from his wounds the next day.

Appellant testified at trial and told the jury he went along with the other three men to meet a person he was told would sell them marijuana. He admitted he and Jordan exited the vehicle Finley was driving at the gas station and commenced walking down the road, at which point the victim drove by and picked them up. Evidence was presented that Finley called appellant three times between 3:41 p.m. and 3:43 p.m., and appellant believed he spoke to Finley at least once during that time. Appellant admitted that when he spoke to Finley appellant was probably walking to meet the victim, and he testified that Finley was probably telling him to hurry up and return with the cigar he had purchased at the gas station.

According to appellant, his intent was simply to purchase a small quantity of marijuana for his own use. After he made his purchase, he waited in the victim's car for Jordan to conduct a separate transaction. Appellant testified he was seated in the front passenger's seat of the victim's car and Jordan was seated in the rear seat behind the driver. Appellant saw Jordan getting out of the rear door of the car and appearing to reach toward his back pocket to retrieve money. Instead, according to appellant, Jordan pulled out a

pistol that appellant was unaware Jordan was carrying and shot the victim. Appellant testified he was shocked to hear the pop of the pistol and to realize the victim had been shot, and he jumped out of the car so quickly that his pants belt broke. He commenced to run away, and Jordan was right behind him. Immediately, appellant realized he had dropped his cell phone and yelled this out to Jordan, and witnesses testified they saw one of the men return to the car briefly before fleeing again. The dropped phone was not retrieved, however, and investigators who discovered the phone at the scene established a connection between appellant and the phone. Appellant ran back to Finley's apartment, and Jordan ran in after him. According to appellant, once the others heard that Jordan had shot the victim, they were upset over what had happened. Cushenberry and Jordan got into a shoving match, and Jordan left. Finley's father then drove the remaining three men to the mall. Appellant explained that he did not call the police to report the shooting because he was too scared. Appellant's brother testified that appellant was upset when he returned home later that evening and told his brother about the shooting. According to appellant's brother, appellant said he didn't know why Jordan shot the victim, and that "[h]e wasn't supposed to shoot him."

Appellant denied being a member of a gang, but he admitted he got a tattoo on his abdomen, shortly after coming to Georgia to spend the summer at his mother's house, that read "M.O.B.," and evidence was presented that appellant's M.O.B. tattoo also had flames as part of the artwork. He testified that the tattoo meant "Money Over B*****s," but he acknowledged that it can also be a gang symbol for "Member of Bloods." Testimony was presented that a flame design is commonly part of the artwork associated with the Bloods gang, and that the tattoos found on appellant's body also had other elements that were associated with the Bloods. A red bandana was found in appellant's bedroom when the authorities searched it, and testimony was presented that the color red, as well as red bandanas, are associated with a Douglas County gang connected with the Bloods. Witnesses who saw two men running from the victim's car reported that one of the men was wearing a red bandana. Evidence showed the other co-indictees were also affiliated with that Douglas County gang.[3]

---

[3] Similar transaction evidence was presented at trial to establish that appellant had previously been involved in a 2008 incident in Virginia, where appellant then lived, in which a restaurant was robbed at gunpoint. In that incident, as here, appellant denied he knew the other young men in the car in which he was riding were planning an armed robbery, but one of the other individuals involved told investigators that a gun was passed around the vehicle before those who actually committed the robbery entered the restaurant. A Virginia officer who investigated the robbery testified that appellant was initially charged in this previous robbery but the charges were dismissed.

On appeal, "this Court defers to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Manning v. State*, 303 Ga. 723 (1) (814 SE2d 730) (2018). From the evidence presented at trial, the jury was entitled to reject appellant's assertion that he was innocent of any plan to rob the victim. To warrant a conviction, as here, on circumstantial evidence, the evidence must exclude every other reasonable hypothesis save for the guilt of the accused. See former OCGA § 24-4-6 (now found at OCGA § 24-14-6).[4] Questions regarding the reasonableness of hypotheses are generally to be decided by the jury that heard the evidence, and so long as the evidence, even though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, this Court will not disturb a finding of guilt unless the verdict is insupportable as a matter of law. See *Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998); see also *Grissom v. State*, 296 Ga. 406, 408 (1) (768 SE2d 494) (2015). For purposes of establishing proof of a defendant's guilt as a party to a crime, shared criminal intent with the perpetrator may be inferred from a defendant's conduct before, during, and after the crime. See *Thomas v. State*, 296 Ga. 485, 488 (1) (769

---

[4] Because appellant was tried in 2012, the old Evidence Code was applied. See Ga. L. 2011, pp. 99, 214, § 101.

SE2d 82) (2015).  Having reviewed the record with an eye toward the legal sufficiency of the evidence, we conclude the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that appellant was guilty of the crimes of which he was convicted.  See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2.  The trial evidence included Finley's recorded custodial statement in which he mentions that prior to the shooting "they were talking about hitting a lick," meaning robbing someone.  Because Finley was unavailable for cross-examination at trial, appellant also asserts in the enumeration of error regarding the sufficiency of the evidence that the admission of this statement constituted a *Bruton* violation.[5]   In response to this argument at trial, the prosecuting attorney stated that Finley's recorded statement had been carefully redacted to delete any specific references to appellant.  Having reviewed the recorded statement that was played to the jury, we have confirmed that in it, Finley does not refer to appellant as one of the conspirators who planned the robbery.  In fact, shortly before Finley's use of the pronoun "they," he was responding to the investigator's question about whether it was Cushenberry or Jordan who

---

[5] *Bruton v. United States*, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968) (the "powerfully incriminating" statement of a non-testifying co-defendant may violate the constitutional right of a criminal defendant to confront and cross-examine witnesses against him).

first talked about hitting a lick.  Consequently, Finley's statement that "they were talking about hitting a lick," when considered in context, cannot reasonably be interpreted as referring to appellant.  To constitute a *Bruton* violation, a co-defendant's statement "*standing alone* must *clearly inculpate* the defendant."  (Citations omitted; emphasis in original.)  *Thomas v. State*, 268 Ga. 135, 137 (6) (485 SE2d 783) (1997).

> [T]his Court and others have held that *Bruton* only excludes statements by a non-testifying co-defendant that directly inculpate the defendant, and that *Bruton* is not violated if a co-defendant's statement does not incriminate the defendant on its face and only becomes incriminating when linked with other evidence introduced at trial.

*Moss v. State*, 275 Ga. 96, 98 (2) (561 SE2d 382) (2002).  Because this statement only incriminates appellant when combined with other evidence presented at trial from which the jury could conclude appellant was involved in a conspiracy to commit armed robbery of the victim, the admission of this statement was not erroneous.

3.    Appellant notes that he was not charged under the Street Gang Terrorism and Prevention Act, OCGA § 16-15-1 et seq., and asserts that evidence of gang affiliation was therefore unnecessary and highly prejudicial, and that it should have been excluded since its probative value was outweighed

by its prejudicial impact. But no requirement exists for a defendant to be charged with criminal street gang activity before otherwise relevant evidence of gang activity may be admitted. *Wolfe v. State*, 273 Ga. 670, 674 (4) (c) (544 SE2d 148) (2001). Like other evidence, the admission of evidence of gang activity is committed to the sound discretion of the trial court, and the court's decision to admit such evidence will not be disturbed on appeal absent an abuse of discretion. See *Anglin v. State*, 302 Ga. 333, 335 (2) (806 SE2d 573) (2017). "Evidence of gang activity is admissible to show motive even if it incidentally puts defendant's character in evidence." *Willoughby v. State*, 280 Ga. 176, 178 (3) (626 SE2d 112) (2006); see also *Wornum v. State*, 285 Ga. 168, 169 (2) (674 SE2d 876) (2009). The evidence of appellant's gang affiliation consisted of multiple tattoos that, according to the State's expert witness, bear significant similarities to known gang motifs, and co-indictees Cushenberry and Finley also had such tattoos. Additionally, several pieces of paraphernalia associated with the Bloods gang were found during the search of appellant's bedroom.

As this Court concluded in the opinion affirming Finley's conviction:

> Here, evidence that Finley, Cushenberry, Jordan, and Taylor were all involved in a gang was relevant to show the affiliation between the four men and explain the motive of the principals in committing the crimes. The jury could infer that Jordan and Taylor were willing to commit crimes that had been orchestrated by

Finley and Cushenberry — and that allowed the unemployed Finley and Cushenberry to continue their weekend of "partying" by living off the spoils of crimes directly committed by Jordan and Taylor — because they all were affiliated with the same gang. It is well established that involvement with a gang may be admissible to show motive, see *Mallory v. State*, 271 Ga. 150, 153 (6) (517 SE2d 780) (1999), and evidence of gang involvement in this case supported the State's theory of how the co-indictees were affiliated and what motivated them to commit the crimes in the way that they did. As a result, the trial court did not err when it admitted evidence of gang involvement. See *Willoughby v. State*, 280 Ga. 176, 178 (3) (626 SE2d 112) (2006).

*Finley*, 298 Ga. at 453 (2); see also *Cushenberry v. State*, 300 Ga. 190, 196 (2) (e) (794 SE2d 165) (2016). Even the testimony of a close acquaintance of Cushenberry and Finley that these men were not actually gang members, but were simply trying to take on the image of thugs, supported the State's assertion that the evidence of the affiliation of these co-indictees was admissible to explain the appellant's motive to commit the charged crimes.

4. Appellant was taken into custody on May 12, 2010, and was first interviewed that day. Prior to that interview he was given *Miranda*[6] warnings and executed a written waiver of his right to counsel. The initial custodial interview was audio and video recorded. Appellant was interviewed again on

---

[6] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

May 13, after he had attended a bond hearing. Again, the interviewing officer read appellant his *Miranda* rights from a form, and again appellant signed a written waiver of his rights. The second interview was also recorded. The trial court conducted a *Jackson-Denno*[7] hearing and determined both statements were admissible. Appellant asserts the trial court erred by denying his motion to suppress his second custodial statement because, he argues, he unambiguously invoked his right to counsel during that interview. We disagree.

During the interview, after executing a written waiver of his right to counsel, appellant made the statement, "She told me not to talk, that's what she told me." The interviewing officer stated: "I'm not sure who she is, so this is purely a decision you have to make right here for you." Later in the interview, appellant stated: "She told me not to talk." The officer replied: "What's that got to do with anything, I don't understand what you're saying." Appellant responded by saying, "Because I'm — I'm just thinking to myself." Appellant never informed the officer that a lawyer had been appointed to represent him, and never explained whether "she" referred to a lawyer. Moreover, at no point

_____

[7] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

during the interview did appellant expressly invoke the right to counsel despite being informed that he could have a lawyer present during the interview.

At the hearing on appellant's motion to suppress, the officer who conducted the second interview testified he did not know whether appellant had attended a bond hearing between the two interviews or whether appellant had obtained a lawyer. He testified appellant never represented to him that he had retained counsel or that he wanted representation. The officer further testified he did not understand that appellant's statements about what "she" told him referred to an attorney, and that the officer assumed appellant might be referring to his mother or his girlfriend. The public defender also testified at the hearing that she believed she met appellant at the initial bond hearing on May 13, 2010 but that, at the time of the hearing, it was not clear which of the co-indictees she would be appointed to represent. In fact, she verified that an entry of appearance on behalf of appellant was not executed until May 14, 2010. She also testified that she could not recall whether either of the officers who interviewed appellant in either the first or second custodial interviews were present at the initial bond hearing on May 13.

A request for a lawyer "must be clear and unambiguous; the mere mention of the word 'attorney' or 'lawyer' without more, does not

automatically invoke the right to counsel." (Citation and punctuation omitted.) *Dubose v. State*, 294 Ga. 579, 582 (2) (755 SE2d 174) (2014). Here, appellant did not refer to a lawyer, but only referenced what an unidentified "she" told him to do. Even a reference to a lawyer that is so ambiguous or equivocal that a reasonable officer under the circumstances would understand only that the suspect *might* be invoking the right to counsel does not require the cessation of questioning. Id., citing *Davis v. United States*, 512 U. S. 452, 459 (114 SCt 2350, 129 LE2d 362) (1994). See also *Francis v. State*, 296 Ga. 190, 196-197 (3) (766 SE2d 52) (2014). In this case, when the officer told appellant he did not understand his reference to "she," appellant responded that he was merely thinking to himself. Given the ambiguity of appellant's comments about who had advised him not to talk, we find appellant did not invoke his right to counsel during the second interview. Regardless of whether appellant was actually represented by counsel at the time of his second custodial interview, the record demonstrates that he waived in writing his right to have counsel present at the interview and he never explicitly invoked his right to counsel thereafter. See *Dixon v. State*, 294 Ga. 40, 42 (1) (751 SE2d 69) (2013). The trial court did not err in denying appellant's motion to suppress the recordings of the second interview.

5.     We reject appellant's assertion that the trial court erred in admitting the recordings of appellant's custodial statements into evidence because the State failed to meet the foundational requirement of establishing that *Miranda* warnings were given to appellant prior to the State's obtaining those statements.  The record demonstrates this objection lacks merit.  The interviewing officer testified at both the *Jackson-Denno* hearing and at trial and authenticated the respective *Miranda* rights waiver form that was read to appellant and executed by him immediately prior to each of the two custodial interviews.  Those two waiver forms were admitted into evidence.  Further, the interviewing officer testified that he explained the form to appellant as well as explained to him his right to counsel prior to interviewing him.  Here, the evidence was sufficient to establish that *Miranda* warnings were administered and therefore to rebut the presumption that appellant's statements were compelled.

6.     Finally, appellant asserts ineffective assistance of trial counsel in two respects.

(a)     First, appellant argues trial counsel provided ineffective assistance by failing, in a timely fashion, to discover in the record a report submitted by Detective Hickman, one of the officers who participated in the second custodial

interview of appellant, in which Detective Hickman stated he attended appellant's May 13, 2010 bond hearing. That report was not discovered until after Detective Hickman had testified in 2012 at both the *Jackson-Denno* hearing and at trial that he was unaware that appellant was represented by counsel at the time of the second interview and that he did not recall attending appellant's bond hearing earlier on the day of the second interview. The witness could not be recalled for questioning about the report because, immediately after he testified at trial, he was deployed out of state on National Guard duty. Because of the late discovery of the report, appellant argues that his trial counsel was unable to use the report to refresh the detective's recollection regarding his attendance at the bond hearing or to impeach his testimony that he was unaware that appellant was represented by counsel. Appellant asserts these facts demonstrate both that trial counsel's performance was deficient and that a reasonable probability exists that, but for this deficient performance, the outcome of his trial would have been different, thereby satisfying both required prongs of the *Strickland* test. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

We need not reach a finding about whether counsel's failure to discover the report earlier established deficient performance because we conclude

appellant has failed to establish his case was prejudiced as a result of the lost opportunity to cross-examine Detective Hickman with the report. An appellant must show both deficient performance and prejudice therefrom in order to prevail on a claim of ineffective assistance of counsel, and if an appellant fails to meet his burden on one prong of the two-pronged test, then the other prong need not be reviewed. See *Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017). Even assuming counsel was appointed to represent appellant at the time of his bond hearing and that either or both of the interrogating officers were, or should have been, aware of this fact, appellant expressly waived his right to have counsel present at his second interrogation and did not expressly assert it at any time after he executed the written waiver. Even a defendant who is represented by counsel and who has not previously invoked his right to counsel may waive his right to have counsel present at a custodial interrogation after being advised of that right, even if he is not the one to initiate the communication. See *Montejo v. Louisiana*, 556 U. S. 778, 786 (III) (A) (129 SCt 2079, 173 LE2d 955) (2009); *Edenfield v. State*, 293 Ga. 370, 391 (9) (744 SE2d 738) (2013). Because appellant waived his right to counsel before giving his statements, the recording of even the second statement was admissible under the circumstances present in this case.

Accordingly, no prejudice is shown by the loss of opportunity to cross-examine Detective Hickman on his report.

Appellant also argues that trial counsel provided ineffective assistance for his failure to cross-examine Lt. Harrell, the other officer who participated in appellant's second interview, with a copy of Detective Hickman's report for the purpose of impeaching Harrell's testimony that he lacked knowledge that appellant was represented by counsel. The record reflects, however, that counsel attempted to question Harrell about the report but the trial court granted the State's objection to that line of questioning on the ground that appellant could not demonstrate Harrell had personal knowledge of the veracity of Hickman's report. Deficient performance is not shown.

(b) Appellant asserts his trial counsel was constitutionally ineffective for failing to request a jury instruction on theft by taking. The record reflects, however, that this claim of ineffective assistance was neither raised in appellant's motion for new trial, as amended, nor argued at the hearing on his motion for new trial. Because appellant had the opportunity to raise this claim of ineffective assistance to the trial court in his motion for new trial, but failed to do so, this failure acts as a procedural bar to raising the issue on appeal, and this claim is therefore waived for purposes of appeal. See *Lewis v. State*, 291

Ga. 273, 281 (7) (731 SE2d 51) (2012). See also *Stacey v. State*, 292 Ga. 838, 843 (5) (741 SE2d 881) (2013) (failure to raise a claim of ineffective assistance of counsel before appeal, if the opportunity existed to do so, procedurally bars an appellant from raising the issue at a later time).

(a)    As noted in footnote 2, we find certain errors in the sentencing order.[8] The trial court imposed a sentence of ten years imprisonment for the guilty verdict on the conspiracy to commit armed robbery count of the indictment, Count 5. In fact, that guilty verdict merged into the guilty verdict for the felony murder charge predicated on that felony offense. See *Brown v. State*, 302 Ga. 813 (3) (809 SE2d 742) (2018). Accordingly, the additional sentence of ten years imprisonment to be served consecutively to the life sentence is vacated, and this case is remanded for correction of this sentencing error.

Judgment affirmed in part and vacated in part. All the Justices concur, except Peterson and Grant, JJ., who concur in judgment only as to Division 7.

---

[8] This Court has the discretion, sua sponte, to vacate a sentencing order and remand for resentencing when we notice a merger issue on direct appeal, although we have recently announced that we will do so only in exceptional circumstances when the error benefits the defendant and the State fails to raise the error by cross-appeal. See *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017). Accordingly, we do not address any other sentencing errors that do not harm him because they have not been raised by the State on cross-appeal.

Decided June 18, 2018.

Murder. Douglas Superior Court. Before Judge James, Senior Judge.

The Moore Brown Law Group, Angela Z. Brown, for appellant.

Brian K. Fortner, District Attorney, Ryan R. Leonard, Sean A. Garrett, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.