## A09A0782. PILKINGTON v. THE STATE.

(680 SE2d 164)

ELLINGTON, Judge.

A Whitfield County jury found Charles Pilkington guilty of three counts of aggravated assault with intent to rob, OCGA § 16-5-21 (a) (1).[1] Pilkington appeals from the order denying his motion for new trial, contending that his trial counsel was ineffective, that the trial court erred in failing to charge the jury on a lesser-included offense, and that the trial court erred by denying him the right to allocute at sentencing. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the record shows the following relevant facts. At around 8:00 to 8:30 p.m. on December 12, 2005, Larry Rich and his son Eric were loading groceries into their truck in the well-lighted parking lot of a grocery store in Whitfield County. As they loaded the groceries, a man drove up and stopped his truck directly behind them, said "hey," pointed a gun at them, and demanded their wallets. When the robber got out of his truck to take Eric's wallet, the robber's truck started to roll away. When the robber ran to his truck to stop it, the Riches got in their truck and fled. The Riches described the robber, his "fu manchu" mustache and goatee beard, his gun, his flannel jacket with a "block" pattern, and his teal green Dodge truck to the police. While the Riches were talking to the police about the incident, they heard the police dispatcher announce over the radio that another robbery

---

[1] The jury also found Pilkington guilty of three counts of aggravated assault with a deadly weapon. However, in the judgment of conviction, the trial court ordered those offenses merged into the convictions from which Pilkington appeals.

[2] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

attempt had occurred.

At around 8:30 to 9:00 p.m. on December 12, 2005, Tracy Burton was sitting in her car with her two children in a parking lot near an electronics store in Whitfield County while her husband was in the store finishing his Christmas shopping. A man stopped his truck behind Burton's car, got out and approached the passenger side of the car, saying "ma'am, ma'am." Burton, frightened for herself and her children, rolled the car window up and locked the doors as the man tried to reach inside. The man pointed a gun at her and then tapped it against the window glass. Burton screamed, slid from the passenger's seat into the driver's seat, and tried to put her car in reverse. The man ran back to his truck and sped away. Burton gave the police a description of the man, his distinctive goatee beard, his flannel jacket, his gun, his teal green Dodge truck, and a partial tag number.

Three days later, a police officer spotted a truck that matched the description of the robber's truck and partial tag number in a parking lot less than a mile from where the crimes occurred. The officer spoke with the truck's owner, Charles Pilkington, and obtained consent to search the truck and to photograph Pilkington, his truck, and a flannel jacket found inside the truck. Using these photographs, the police created different photographic line-ups to show each victim. Each of the victims picked Pilkington from a different photographic line-up and they each identified him at trial. They also identified Pilkington's truck and his flannel jacket at trial.

The police also searched Pilkington's home and found a number of rifles and some ammunition, although they found no handgun specifically like the one used in the robbery. When the police interviewed Pilkington's sister, she volunteered that her brother had not gotten any money from the victims, a detail which the police had not revealed. Pilkington also changed his appearance between the day the police initially spoke to him and the day he was placed under arrest. He cut his hair, dyed it blonde, and shaved off most of his facial hair.

1. Pilkington contends his trial counsel was ineffective based on counsel's failure to object to the admission of certain evidence at trial.

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. There are two components to the inquiry: First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that

counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. The [United States Supreme] Court set forth the appropriate test for determining prejudice: The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

(Citations and punctuation omitted.) *Miller v. State*, 285 Ga. 285, 285-286 (676 SE2d 173) (2009). "A defendant's right to effective assistance of counsel does not guarantee errorless counsel or counsel judged ineffective by hindsight[,] but counsel . . . likely to render *and rendering* reasonably effective assistance." (Citation omitted; emphasis in original.) *Moody v. State*, 206 Ga. App. 387, 390 (1) (e) (425 SE2d 397) (1992). The trial court's determination that Pilkington was afforded reasonably effective assistance of counsel will be upheld on appeal unless it was clearly erroneous. *Turner v. State*, 245 Ga. App. 294, 295 (4) (536 SE2d 814) (2000).

(a) Pilkington contends counsel's performance was deficient because he failed to object to improper character evidence relating to his alleged drug use. The record shows that trial counsel successfully moved pre-trial to have all evidence of Pilkington's drug use, including an arrest for drugs, excluded. Nevertheless, when Pilkington's sisters' improperly redacted videotaped interviews were played at trial, the jury heard one sister mention that Pilkington had been fired from his job for allegedly smoking crack cocaine and the other mention that he had been arrested for possessing suspected methamphetamine. Defense counsel did not object to the videotapes because he was concerned that posing an objection would unduly emphasize the damaging evidence. Counsel also chose not to make a motion for mistrial because he believed that "so much else which was [more] damaging had already come out in that testimony[.]" Instead, when cross-examining one of the sisters, counsel adduced testimony showing that although Pilkington had been fired from work, the allegations of drug use were false. The focus of the defense remained one of misidentification, and counsel presented an expert witness on the issue.

(b) Pilkington also contends trial counsel was ineffective for failing to object to testimony by police officers who gave opinion evidence regarding his credibility and that of a witness. The record shows that a responding officer testified that she saw no indication that witness Tracy Burton was, due to the trauma of the assault, making errors in her description of the robber or the truck. Instead of objecting to this evidence, counsel, on cross-examination, had the officer admit that she was not an expert on memory, had never testified as such in any court, and that the officer believed, in fact, that Burton was hysterical and unfocused after the robbery. Also, a detective who interviewed Pilkington testified that he noted inconsistencies in Pilkington's statement and observed that Pilkington's guarded body language and mannerisms suggested deception to him. Counsel did not object, but on cross-examination, he immediately shifted the focus back to the fact that the detective had found no ammunition matching the handgun used in the robbery in Pilkington's home, that there was no evidence that Pilkington was a drug user, and that the detective was a rather intimidating person who made Pilkington very uncomfortable during the interview.

(c) Assuming, without deciding, that trial counsel's performance was deficient for failing to object to the evidence set forth above, the assumed deficient performance created little actual prejudice considering the overwhelming evidence of Pilkington's guilt. Three victims each gave detailed descriptions of the robber's distinctive clothing, facial hair, and pickup truck. One witness got a partial description of the robber's license tag number. The police found a truck matching that description and partial tag less than a mile from the scene of the crimes. The police found Pilkington's jacket in the truck, and the victims identified both the jacket and the truck as belonging to the robber. Each victim positively identified Pilkington at trial and from photographic lineups as the robber. Further, Pilkington evidenced his own guilt by dramatically changing his appearance immediately after the police first talked to him. Under the circumstances, we conclude that Pilkington did not establish that there is a reasonable probability that any collective prejudice stemming from counsel's errors would have changed the outcome of this trial. See *Phillips v. State*, 285 Ga. 213, 223 (5) (k) (675 SE2d 1) (2009). Consequently, the trial court's determination that Pilkington was afforded effective assistance of counsel was not clearly erroneous. See id.

2. Pilkington contends the trial court erred in refusing to charge the jury that it could find him guilty of attempted armed robbery, contending that the offense is a lesser included offense of aggravated assault with intent to rob, and that a written request to charge a lesser-included offense must be given if there is any evidence that the defendant is guilty of the lesser-included offense. See *State v.*

*Alvarado*, 260 Ga. 563, 564 (397 SE2d 550) (1990). Given the facts of this case, we must disagree.

> An attempt to commit a crime may be found as a lesser included offense even though the greater crime was actually committed (OCGA § 16-4-2 (Code Ann. § 26-1004)); but where an attempt to commit one crime can only be proved by proof of another, greater, consummated crime, the attempt of the former cannot possibly be "included" or "lesser" than the latter.

(Emphasis omitted.) *Cannon v. State*, 167 Ga. App. 225, 227 (4) (305 SE2d 910) (1983) (physical precedent only). Pilkington was not entitled to a charge or verdict of attempted armed robbery when that offense could *only* be proved by showing that he brandished a weapon in the faces of his victims with the intent to rob them, that is, that he actually committed the greater offense, a completed aggravated assault with the intent to rob. See id. In this case, the evidence that proved that Pilkington committed an attempted armed robbery necessarily proved that he committed the greater, completed crime of aggravated assault with intent to rob. "There is therefore no evidence that appellant committed *only* the offense of attempted [armed robbery] and he was not entitled to a charge on this lesser included offense." (Emphasis supplied.) Id.

3. Pilkington contends the trial court erred in refusing to allow him to speak and to offer evidence in mitigation of his punishment at sentencing, pursuant to OCGA § 17-10-2. To the contrary, the record reveals that the court heard evidence in mitigation from Pilkington's sister and mother and heard the arguments of defense counsel. The court asked Pilkington directly if he had anything to say, and he said "no." After the court began to pronounce sentence, Pilkington interrupted, indicating a desire to make a statement, but the court found that to be "a little late in the ball game."

When counsel argued on Pilkington's behalf and presented evidence in mitigation at the sentencing hearing, the requirements of OCGA § 17-10-2 were met. *Habersham v. State*, 289 Ga. App. 718, 719-720 (3) (658 SE2d 253) (2008). The trial court did not violate Pilkington's right of allocution when it instructed [him] not to interrupt its pronouncement of sentence. Id. at 720 (3). Thus, we find no error.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JUNE 12, 2009

*Michael R. McCarthy, Benjamin D. Goldberg*, for appellant.
*Kermit N. McManus, District Attorney, Forest L. Miles, Assistant District Attorney*, for appellee.