## A09A0833. NAVA v. THE STATE.
(687 SE2d 901)

ADAMS, Judge.

Eduardo Nava was convicted of armed robbery and aggravated assault. He appeals following the trial court's denial of his motion for new trial.

Viewed in the light most favorable to the verdict,[1] the evidence at trial showed that in the early morning of July 25, 2002, Nava and two others, Jesus Garibay and Miranda Sanders, left a party at a trailer owned by Edward Forey to go on a "beer run." Before leaving, Forey gave Garibay a gun and a black jacket. Nava was wearing a blue jersey with the number "13" on it at the time. The three drove to a convenience store near the trailer park. Sanders waited in the car while Nava and Garibay went inside.

Bill Ruttschaw, the store's clerk, testified that after visiting the store's beer cooler, Garibay laid a gun on the counter pointed at him. A second man came inside the store, wearing a blue jersey and telling Ruttschaw to open the register. Ruttschaw originally identified Carlos Aguirre as the second robber, but other witnesses at trial, who knew both Aguirre and Nava, testified that it was Nava who left the trailer with Garibay to go to the convenience store that night.

Ruttschaw opened one register in response to Nava's demand, and Nava took the money. When Ruttschaw had trouble opening a second register, however, Nava struck him in the head and told Garibay to shoot him. Ruttschaw testified that he was "really, really scared" at this point. After the two men left the store, Ruttschaw called police. The tape from the store's surveillance camera was played at trial, and Ruttschaw identified Garibay as the man with the gun, while the evidence showed that Forey identified Nava for

---

[1] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Additionally, the facts underlying this appeal are more fully set out in *Garibay v. State*, 275 Ga. App. 170 (620 SE2d 424) (2005) (*"Garibay I"*).

the police as the second man on the tape.

After they returned to Forey's trailer, Nava told Sanders what had happened in the store, telling her how he had hit the victim and told Garibay to shoot him. Nava pulled money from his pocket that he said they had taken from the clerk. Garibay, Forey and Nava divided the money among themselves and the gun was returned to Forey. Nava removed the blue jersey when he returned to Forey's trailer, and he could not find it the next day when he left. A later search of Forey's trailer turned up a blue jersey with the number "13" on it, like the one worn by Nava that night.

1. Nava asserts on appeal that his attorney was ineffective in representing him at trial. "A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (Punctuation and footnote omitted.) *Ellison v. State*, 296 Ga. App. 752, 756 (2) (b) (675 SE2d 613) (2009). In order to establish a claim of ineffective assistance of counsel, Nava is required to show both that his counsel was deficient and that there was a reasonable probability that the outcome of the trial would have been different but for his counsel's deficiency. See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Braithwaite v. State*, 275 Ga. 884, 885 (2) (b) (572 SE2d 612) (2002). Nava's claim fails if he fails to make either of these showings. *Braithwaite*, 275 Ga. at 885 (2) (b). Moreover, Georgia courts recognize a strong presumption that trial counsel was effective, and we will uphold the trial court's determination of effective representation unless that determination was clearly erroneous. Id.; *Kania v. State*, 280 Ga. App. 356, 360 (5) (634 SE2d 146) (2006).

(a) Nava first asserts that his trial attorney was ineffective in failing to consult with him on important decisions or to keep him informed of important developments in the case. He claims his attorney failed to review with him, or to arrange for him to view alone, the store surveillance videotape or videotaped witness statements, including statements from Ruttschaw, Sanders, Forey and Aguirre. He asserts that had he seen that evidence before trial, he would have entered a guilty plea. In addition, he contends that his trial counsel failed to inform him of a plea offer.

At the hearing on the motion for new trial, Nava's counsel testified that she spent "many a night" viewing and taking notes on the nine to thirteen videotapes provided by the State. She did not view the tapes with Nava or arrange for him to see them because that would have required "a substantial amount of time." Instead, she summarized them for Nava, telling him what the victim, co-defendants and witnesses were saying. As a general rule, she discusses with the client the evidence in relation to the client's

defense and "the challenges we may or may not be able to make." Where a witness gave multiple statements, as Sanders and others did in this case, counsel reviewed the differences between those statements with the client. The attorney admitted that much of the evidence "certainly wasn't good for" Nava, but she made it clear to him what the witness statements included, "especially when the co-defendants were cutting deals" to testify against Nava at trial "because that was substantial." There is "no way" she would have started Nava's trial "without him being aware that the trial had somewhat changed" by these deals.

She also

> made it quite clear to Mr. Nava that prior to trial he may have an offer to be able to plea to something, but once the trial started, he may or may not; we'd have to talk with [the prosecutor] about what was offered at that time and what his risk would be if the co-defendants did all come in to testify against him.

She felt "quite confident" that she explained to Nava that he had a right to enter a guilty plea at any time, "but he wasn't guaranteed anything unless [the prosecutor] agreed to a negotiated plea or he could do a non-negotiated plea." The attorney recalled that Nava received a plea offer, although she could not recall the specifics, and she feels confident that she would have discussed it with him "[b]ecause at the end of the day, Mr. Nava is the one who has to make that decision."

Nava testified, however, that his attorney never mentioned any videotapes or witness statements to him, but he also stated that she told him she would try to get him to view the videotapes. He never got that opportunity, but the attorney "would try to keep telling me information that was going on in the case." Nava said that he only became aware that the others had taken plea bargains when his attorney told him at trial. She did not advise him at that time that he could still plead guilty, and he thought that he could not stop the trial at that point. He also said that his attorney never told him about any plea offer from the State. If he had known about the offer and had seen the videotapes before trial, he "would have looked at accepting the plea offer." He claimed that seeing the tapes himself was different from his counsel's summary, because "[t]here's three people testifying against me and they're getting plea bargains, so they're going to believe what they're saying."

The trial court was authorized to credit counsel's testimony in denying the motion for new trial. Although Nava did not personally review the videotapes before trial, his attorney informed him as to

what was on them, and he has not shown that she failed to convey any specific information. In denying the motion for new trial, therefore, the trial court properly could have found that counsel sufficiently informed Nava about the witness statements and the plea offer. See *Daly v. State*, 285 Ga. App. 808, 812 (4) (c) (648 SE2d 90) (2007). Moreover, Nava failed to prove the specifics of the State's plea offer, and he testified only that he would have "looked at" accepting it. The evidence, therefore, "supports a finding, implicit in the trial court's ruling, that there was no reasonable probability that [Nava] would have pled guilty but for counsel's [claimed] ineffectiveness." (Citation and punctuation omitted.) *Cleveland v. State*, 290 Ga. App. 835, 839-840 (2) (660 SE2d 777) (2008). See also *Thomas v. State*, 274 Ga. 156, 164-165 (10) (549 SE2d 359) (2001).

(b) Nava next argues that his attorney was ineffective in failing to object to the State's violation of the rule of sequestration in keeping Douglasville police officer Zach Ardis at the prosecution table throughout the trial. He asserts his attorney should have objected to Ardis's presence or at the very least requested that the detective testify first in the case. But Nava failed to demonstrate how he was prejudiced by Ardis's presence at trial. Although he asserts generally that Ardis was "influenced" by the other witnesses' testimony and was given "the opportunity to explain, clarify or corroborate their testimony," he points to no examples of improper influence, nor does he explain how any such instances resulted in prejudice to him. Accordingly, he failed to establish his ineffectiveness claim on this ground. See *Hargett v. State*, 285 Ga. 82, 85 (3) (c) (674 SE2d 261) (2009).

(c) Nava further contends that his trial counsel's performance was deficient because she failed to object when Ardis gave improper opinion testimony. Nava points to Ardis's identification of the blue jersey with the number "13" found at Forey's trailer. Ardis responded in the affirmative when the prosecutor asked him whether that jersey "matched" what he saw on the store's surveillance tape and when he was later asked if it appeared to be "consistent with" the jersey on the tape. Nava asserts that this testimony improperly invaded the province of the jury, who could decide for themselves whether the two jerseys matched. Similarly, Nava contends that his attorney should have objected when Ardis described what he saw on the surveillance tape. He asserts that the testimony provided facts which the jury could decide from viewing the tape themselves.

"Ordinarily, a witness may not express his opinion as to an ultimate fact, because to do so would invade the province of the jury." (Citation and punctuation omitted.) *Amaechi v. State*, 254 Ga. App. 490, 494 (3) (e) (564 SE2d 22) (2002). And Nava's trial attorney could not recall any reason she failed to object. But even assuming, without

deciding, that counsel's performance was deficient, we find that Nava failed to show that the result of the trial would have been different but for this deficiency. See *Frazier v. State*, 263 Ga. App. 12, 16 (3) (c) (587 SE2d 173) (2003); *Amaechi*, 254 Ga. App. at 494 (3) (e). Ruttschaw also testified that the blue jersey was "similar" to that worn by the second robber and was "consistent" with what he saw on the video and in the photographs. In addition, Sanders testified that the jersey appeared to be the one Nava had on when he left for the convenience store that night. Further, Ardis described what he saw on the videotape, in part, to explain that the convenience store had four different cameras photographing from different angles. And his description merely related the action on the tape without identifying the individuals involved, other than Ruttschaw. Nava did not contest the facts in the underlying robbery; rather, he based his defense upon a claim of misidentification. Nava fails to explain how Ardis's description prejudiced this defense.

(d) Nava also asserts that his counsel was ineffective in failing to cross-examine Ruttschaw and Ardis with Ruttschaw's prior inconsistent statement identifying Aguirre as the second robber. Although both men testified at trial that Ruttschaw was not certain that Aguirre was the second man when he identified him, neither Ruttschaw's handwritten statement nor Ardis's police report reflected any equivocation in the identification.

"[T]he scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Punctuation and footnote omitted.) *Ellison*, 296 Ga. App. at 756 (2) (b). Nava's counsel testified that she chose not to impeach the witnesses with the prior statement or the police report because she felt that she had "made that point clear" in other cross-examination. She asked Ruttschaw about a photographic lineup she had shown him shortly before trial from which he once again picked Aguirre as the second robber. Even if Nava believes his counsel's trial strategy was misinformed, he cannot show prejudice because his attorney utilized other methods to establish the same point.

Additionally, we conclude that Nava failed to demonstrate a reasonable probability that trial counsel's claimed deficiencies, when considered collectively, would have changed the outcome of this trial. See *Phillips v. State*, 285 Ga. 213, 223 (5) (k) (675 SE2d 1) (2009); *Pilkington v. State*, 298 Ga. App. 317, 320 (1) (c) (680 SE2d 164) (2009).

2. Nava also argues that the trial court erred in sentencing him for both aggravated assault and armed robbery because the offenses merged for sentencing.

We note first that Nava's co-defendant Garibay raised the same issue with regard to his sentence in *Garibay v. State*, 290 Ga. App.

385, 387 (2) (659 SE2d 775) (2008) (*"Garibay II"*), and this Court affirmed Garibay's sentence, finding that no merger occurred. In that case we noted that "[a]ggravated assault is not a lesser included offense of armed robbery as a matter of law, and the two offenses rarely merge as a matter of fact." (Citation and punctuation omitted.) Id. at 386 (2).

Nava argues, however, that because both charges alleged the use of a handgun and because the men brandished the gun while simultaneously demanding money, the crimes alleged involved one single act, which cannot support both sentences. Even if we assume, without deciding, that the crimes alleged were a single act, that does not necessarily preclude Nava from being sentenced for two separate offenses. In determining whether a single act involves two separate offenses, "Georgia's courts apply the 'required evidence' test." (Citation omitted.) *Rouse v. State*, 295 Ga. App. 61, 61-62 (1) (670 SE2d 869) (2008). Under that test, a single act may be an offense against two statutes if each provision requires proof of an additional fact which the other does not. See *Drinkard v. Walker*, 281 Ga. 211, 214-217 (636 SE2d 530) (2006) (adopting the "required evidence" test for determining when one crime is included in another under OCGA § 16-1-6 (1), and overruling cases inconsistent with that test).

Count 1 of the indictment charged that Nava and his co-defendants committed armed robbery "by use of an offensive weapon, to-wit: a handgun" with the intent to commit a theft. Count 2 charged them with unlawfully making an assault upon the person of the victim "with a deadly weapon, to-wit: a handgun." In order to establish armed robbery, the State must show that a defendant "with intent to commit theft, [took the] property of another from the person or the immediate presence of another by use of an offensive weapon. . . ." OCGA § 16-8-41 (a). And in order to establish aggravated assault as alleged in this case, the State was required to establish an assault with a deadly weapon. OCGA § 16-5-21 (a) (2). Proof of assault as charged in this case required the prosecution to prove that defendants committed "an act that placed the alleged victim in reasonable fear of immediately receiving a violent injury." See OCGA § 16-5-20 (a) (2).

Each of these crimes requires proof of a fact that the other does not. Robbery requires proof that Nava and his co-defendants took the property of another, which is not required to prove aggravated assault. Assault requires proof that the victim was placed in reasonable fear of immediately receiving a violent injury, which armed robbery does not. The prosecution presented evidence that with Garibay controlling the handgun, Nava took money from the store's cash registers. The evidence also showed that Nava urged Garibay to shoot Ruttschaw after Nava hit him in the back of the head with his

hand. Ruttschaw testified that he was afraid at this point. Under these circumstances, although both crimes involved the use of a handgun, the two crimes did not merge, and the trial court correctly sentenced Nava for both offenses. See *Drinkard*, 281 Ga. at 217.

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED NOVEMBER 23, 2009 —
RECONSIDERATION DENIED DECEMBER 10, 2009.

*Sanford A. Wallack*, for appellant.
*David McDade, District Attorney, James A. Dooley, Assistant District Attorney*, for appellee.