**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 4, 2019**

# In the Court of Appeals of Georgia

A19A0577. ADAMS v. THE STATE.

MERCIER, Judge.

A jury found David Lewis Adams, Jr. guilty of rape, aggravated child molestation, incest, aggravated sodomy, child molestation (four counts), electronically furnishing obscene materials to a minor, and cruelty to children.[1] Adams appeals the

---

[1] The offenses for which Adams was found guilty were: Count 1 - rape (carnal knowledge of T. M., who was under ten years of age) ; Count 2 - aggravated child molestation (act involving defendant's sex organs and child's mouth); Count 3 - incest (sexual intercourse with defendant's daughter, T. M.); Count 4 - aggravated sodomy (act involving defendant's sex organ/T. M.'s mouth); Count 5 - child molestation (defendant's sex organ placed on T. M.'s sex organ); Count 6 - child molestation (touched T. M.'s vaginal area with his finger); Count 7 - child molestation (had T. M. place vibrating device on her vaginal area); Count 8 - electronically furnished obscene materials to minor (furnished visual representation of sexual conduct to T. M.); Count 10 - cruelty to children, first degree (caused H. H., a child, excessive mental pain by molesting her sister in H. H.'s presence) ; and Count 11 - child molestation (had T. M. commit sex act, T. M.'s mouth/defendant's sex organ, in presence of H. H.). The

convictions entered on the verdict, contending that: the court erred by denying his motion to excuse a juror for cause; the court erred by allowing evidence to be published to the jury without the evidence having been properly admitted; and trial counsel provided ineffective assistance. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, *McCord v. State*, 305 Ga. 318 (825 SE2d 122) (2019), the evidence presented at trial included the following. Adams was the father of two girls, T. M. and A. P., and one son, J. A. The children had three different mothers. Adams did not have custody of the children, but they visited him on weekends and sometimes spent time with him during the week.

In February 2016, T. M., who was then about ten years old, reportedly told a classmate that Adams was having sex with her. In response to that report, an investigator with the Forsyth County Department of Family and Children Services ("DFACS") went to T. M.'s home and interviewed T. M., T. M.'s mother, and T.

---

indictment alleged that the crimes were committed between February 24, 2013 and February 20, 2016, with the exact dates unknown. The jury found Adams not guilty of Count 9 (furnishing alcohol to T. M.) and Counts 12 through 15 (electronically furnishing obscene materials to A. P., child molestation of A. P. (two counts), and furnishing alcohol to A. P.).

M.'s half-siblings who lived with T. M. (eight-year-old half-sister H. H., and six-year-old half-brother J. M.); H. H. and J. M. were not Adams's children.

In the interviews, T. M. initially denied that Adams had sex with her. J. M., who did not typically go to Adams's home, had no knowledge of any such acts. H. H., however, told the DFACS investigator that she witnessed sexual conduct between Adams and T. M., including seeing Adams make T. M. sit on him and "put his private parts in, her word, butt." H. H. said that Adams "would make them watch videos of people doing, in her words, bad things to each other[.]" A few days after being interviewed, T. M.'s mother informed the investigator that T. M. told her that "things ended up happening" between T. M. and Adams.

A victim services coordinator from the Lumpkin County Sheriff's office interviewed T. M., and a videotape of that interview was shown at trial T. M. also told the interviewer that Adams made her and A. P. watch a video of naked people "humping," that there was a vibrating "egg," and that Adams broke the egg.

An investigator with the sheriff's office obtained search warrants for the houses where Adams resided and where T. M. said the acts occurred, including a house in which Adams had a bedroom and others in which "he would crash on the couch." Searches of Adams's bedroom revealed an egg-shaped vibrating device with a broken

3

cord, pornographic DVDs, a pair of child's underpants under his bed, a used condom, and bodily fluids on his bed sheet. Another used condom was found in a bathroom where T. M. said some of the acts occurred.

At trial, T. M. testified that on multiple occasions Adams made her perform oral sex on him, have sexual intercourse with him, and made her use a vibrating egg device on her genitals. T. M. stated that Adams put a "rubber thing" on his penis when he committed some of the acts; T. M. did not know what the rubber object was, but stated that it came in a small paper wrapper. Adams also made her watch videos of naked people doing "[t]he same thing that happened to [her]." The acts took place at Adams's home, in his bedroom and bathroom, in a bathroom in her aunt's home, in a car, and in an abandoned house. She stated that H. H. and A. P. were present during some of the incidents, and that Adams told H. H. to touch his genitals.

H. H., who was nine years old at the time of trial, testified that she spent the night at Adams's home with T. M., and on two occasions she saw Adams's "private parts" and saw Adams and T. M. engaged in various sexual acts. She also saw Adams and T. M. viewing a video of people "doing it."

A. P., who was 12 years old at trial, testified that she went to Adams's home on weekends. She testified that Adams touched her vaginal area and buttocks on more

4

than one occasion, and he offered to show her what "[she] didn't want boys to do to [her]." Believing he meant something sexual, A. P. refused his offer. A. P. acknowledged at trial that she had previously denied that Adams had touched her inappropriately, but explained that she was uncomfortable telling people what he had done.

1. Adams contends that the trial court erred by denying his motion to strike a potential juror (Juror No. 7) for cause, forcing him to "waste a valuable peremptory strike" to remove her from the panel. He asserts that the juror admitted during voir dire that she was biased and was not sure if she could listen to the evidence and be fair, and that she believed Adams had the burden of proving his innocence.

For a juror to be stricken for cause, it must be established that the juror holds an opinion on guilt or innocence that is so fixed that the juror will be unable to set that opinion aside and decide the case based on the evidence or the trial court's charge at trial. *Menefee v. State*, 270 Ga. 540, 542 (2) (512 SE2d 275) (1999), disapproved on other grounds by *Willis v. State*, 304 Ga. 686, 706, n.3 (11) (a) (820 SE2d 640) (2018); see *Clark v. State*, 246 Ga. App. 842 (542 SE2d 588) (2000).

> On appeal, our inquiry is whether the trial court's qualification or disqualification of the prospective juror is supported by the record as a

5

whole. An appellate court must pay deference to the finding of the trial court; this deference includes the trial court's resolution of any equivocations or conflicts in the prospective juror's responses on voir dire. Whether to strike a juror for cause is within the discretion of the trial court and the trial court's rulings are proper absent some manifest abuse of discretion.

*Lewis v. State*, 279 Ga. 756, 760 (3) (a) (620 SE2d 778) (2005) (citations and punctuation omitted).

Although Juror No. 7 initially expressed doubt as to whether she could be fair given the types and number of crimes alleged, she later stated that she could decide the case based on the evidence and understood that the State would have to prove Adams's guilt. Thus, the court did not abuse its discretion in denying Adams's motion to strike the juror for cause.

Moreover,

a defendant is not presumptively harmed by a trial court's erroneous failure to excuse a prospective juror for cause simply because the defendant subsequently elected to remove that juror through the use of a peremptory strike. Instead, such a defendant must show on appeal that one of the challenged jurors who served on his or her twelve-person jury was unqualified.

*Willis v. State*, 304 Ga. 686, 707 (11) (a) (820 SE2d 640) (2018) (citations omitted).

6

Adams asserts that he used one of his peremptory strikes to remove Juror No. 7 from the panel from which the jury was chosen. Adams has not shown that any challenged juror who served on the jury was unqualified. See *Willis*, supra. We note that Adams's reliance on *DeSantos v. State*, 345 Ga. App. 545 (813 SE2d 782) (2018), is misplaced because the juror in *DeSantos* was not rehabilitated, and because *DeSantos* was expressly overruled on the pertinent ground by *Willis*, supra at 706 (n. 3). Adams has shown no basis for reversal. See generally *Willis*, supra.

2. Adams contends that the trial court erred by allowing Exhibits 21 and 23 to be published to the jury without having been properly admitted. Adams asserts that the transcript does not refer to those exhibits, that the parties discussed at trial whether those exhibits were actually admitted, that the record does not indicate whether the exhibits were admitted, and that the exhibits are absent from the record. Notably, while Adams states that the exhibits consisted of photographs, he does not indicate what the exhibits depicted.

Inasmuch as Adams has not shown by the record that the exhibits at issue were published to the jury, there is nothing for this Court to review. *Duncan v. State*, 342 Ga. App. 530, 537 (4) (804 SE2d 156) (2017) ("Where the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to

7

have the record completed in the trial court under the provisions of OCGA § 5-6-41 (f). When this is not done, there is nothing for the appellate court to review.") (citations and punctuation omitted). Further, given that we do not know what the exhibits depicted, Adams has not demonstrated harm. See generally *Raines v. State*, 304 Ga. 582, 592 (4) (820 SE2d 679) (2018); *Andrews v. State*, 331 Ga. App. 353, 356 (2) (771 SE2d 59) (2015).

3. Adams contends that trial counsel was ineffective because he failed to: (a) object to improperly published evidence; (b) investigate Adams's real name; (c) object to "improper child hearsay notice"; and (d) call a necessary witness at trial. The contentions are without merit.

"To prevail on an ineffective assistance of counsel claim, [Adams] must prove both that his trial counsel's performance was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)." *Duncan*, supra at 537-538 (5). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (2) (690 SE2d 801) (2010). "In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to the trial court's factual

findings, which are upheld on appeal unless clearly erroneous; however, we review the lower court's legal conclusions de novo." *Duncan*, supra at 538 (5) (citation and punctuation omitted).

(a) Because there is no showing that the exhibits at issue were published to the jury (or what they depicted), Adams has not demonstrated that he was prejudiced by defense counsel's failure to object to the purported publication. See *Duncan*, supra at 540.

(b) Adams contends that he told defense counsel when counsel was first appointed that his name was "Lewis Junior Adams" but that he was indicted as "David Lewis Adams, Jr.," and that he asked counsel to investigate "because the name was wrong." Adams argues that counsel was deficient for failing to investigate the name discrepancy and "attempt to remedy . . . issues" that resulted in his being convicted under a name that was not his.

The record shows that Adams was indicted as "David Lewis Adams, Jr., AKA Junior." At the hearing on the motion for new trial, Adams presented evidence that the name on his birth certificate was "Lewis Junior David Adams."

Adams is correct that identity is an essential element of the crime, and the State must prove identity beyond a reasonable doubt. See *Worsham v. State*, 304 Ga. App.

9

806, 807 (697 SE2d 917) (2010). The State presented evidence from which the jury could find beyond a reasonable doubt that Adams, the accused, committed the crimes. Specifically, Adams was positively identified at trial by various witnesses as "David Adams," as T. M.'s father, and as the perpetrator of the charged crimes. We note that the names on the birth certificate and the indictment consist of the same four names, though listed in different order.

Moreover, where an accused is known by different names, it is lawful for an indictment to identify the accused by such names as aliases. *Stevens v. State*, 247 Ga. 698, 701 (3) (278 SE2d 398) (1981), and an indictment can cite a name by which an accused is generally called. see *Roland v. State*, 127 Ga. 401 (56 SE 412) (1907) (a name by which a person is generally known is a proper designation in an indictment, though he may have had another name). Adams has not shown that he was never known by the names under which he was indicted, including the alias "Junior." See generally OCGA § 17-7-112 (a plea of misnomer should state the true name of the accused person, that he had never been known by any other name, and that he was not known and called by the name contained in the indictment). Thus, Adams has failed to show either a deficiency or that the outcome of the trial would have been different had counsel investigated or attempted to remedy the purported name discrepancy.

10

(c) Citing OCGA § 24-8-820,[2] Adams contends that the State was required to provide him with notice prior to trial that it intended to use at trial a child's out-of-court statement. In his brief, Adams asserts that "the State sent an email to trial counsel on February 12, 2017 at 2:11 a.m. [stating] that although trial counsel 'probably know[s]' already, 'there will be child hearsay testimony offered in the trial of this case.'" Trial counsel testified at the hearing on the motion for new trial that he received the email.

Adams argues that such was not proper notice and defense counsel should have objected. Adams does not explain how the notice was improper, other than noting that trial counsel "usually receive[s] a formal notice" instead of an email. The State's notice, supplied approximately two weeks before trial, complied with the statute's notice requirement. See OCGA § 24-8-820. An attorney's failure to make a meritless objection cannot serve as grounds for an ineffective assistance of counsel claim. See *Young v. State*, 305 Ga. 92, 97 (5) (823 SE2d 774) (2019).

---

[2] OCGA § 24-8-820 provides: "A statement made by a child younger than 16 years of age describing any act of sexual contact or physical abuse performed with or on such child by another or with or on another in the presence of such child shall be admissible in evidence by the testimony of the person to whom made if the proponent of such statement provides notice to the adverse party prior to trial of the intention to use such out-of-court statement and such child testifies at the trial[.]"

11

(d) Adams contends that before trial he requested that defense counsel speak with his son J. A., but that counsel failed to interview the child and call him as a witness at trial. Adams claims that J. A. would have testified that he saw Adams "pretty much every weekend" and spent summers with him, was visiting with Adams "just about" every time T. M. and A. P. visited, that T. M. and A. P. always slept in a female cousin's room, and that Adams was never alone in the car with T. M. According to Adams, this testimony would have shown that he lacked the opportunity "for much of the alleged contact to have occurred."

However, J. A.'s testimony would not have shown that Adams lacked the opportunity to commit the alleged acts. At the hearing on the motion for new trial, J. A. testified that from 2013 to 2016, he saw Adams "[p]retty much every weekend" and all summer, and when J. A. was asked if he, T. M., and [A. P.] ever visited Adams at the same time, J. A. replied "[e]very time *just about*." (Emphasis supplied.) Asked if T. M. might have gone to Adams's house during the week when J. A. was not there, J. A. replied, "I don't *think* it ever happened." (Emphasis supplied.) Thus, the child's expected testimony did not foreclose all possible opportunity of contact. In addition, T. M. testified that the offenses were committed in different locations, and other siblings testified that they witnessed some of the crimes. In light of the overwhelming

12

evidence of Adams's guilt, Adams has failed to show that the result of the proceeding would have been different had J. A. testified at trial. See generally *Williams v. State*, 290 Ga. 533, 537 (2) (b) (722 SE2d 847) (2012).

Because Adams has not established deficient performance and prejudice so as to support a claim of ineffective assistance of counsel, the enumerated error fails. See generally *Eller v. State*, 303 Ga. 373, 384 (IV) (F) (811 SE2d 299) (2018).

*Judgment affirmed. Barnes, P. J., and Brown, J., concur.*