**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**June 21, 2021**

# In the Court of Appeals of Georgia

A21A0136. MARTIN v. THE STATE.

MARKLE, Judge.

Following a jury trial, Shian Martin was convicted of rape, aggravated assault, battery, aggravated sexual battery, and theft by taking in connection with an altercation involving his former girlfriend. He now appeals from the trial court's order denying his motion for new trial, arguing that (1) he received ineffective assistance of counsel due to counsel's failure to (a) object to hearsay testimony that bolstered the victim's testimony, and (b) call witnesses who would have diminished the victim's credibility and given a motive for her to fabricate the allegations; and (2) the trial court erred by admitting hearsay testimony under the guise of a prior consistent statement. After a thorough review of the record, and for the reasons that follow, we affirm.

The evidence presented at trial showed that the victim began dating Martin in November 2016.[1] The relationship progressed quickly, and Martin moved in with her a few weeks later. Martin soon became controlling and verbally aggressive before escalating to physical abuse. By the following January, Martin had pushed the victim, grabbed her by the neck, and brandished a knife when he became angry, and the victim asked him to move out of her apartment.

Although Martin had moved out of the home, the victim and Martin continued to see each other and have sexual relations while the victim planned to end the relationship. Then Martin began to show up at the victim's apartment uninvited and prevent her from going to work. In early February, Martin arrived at the victim's apartment upset, and he refused to allow her to leave. The victim remained trapped for about four days, during which Martin became abusive, grabbing her and yelling, before calming down. At times, Martin forced her to have sex with him. As a result of Martin's conduct, the victim missed several days of work. By the end of the four

---

[1] Although we generally review the evidence in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), as our Supreme Court recently clarified, when we consider whether an alleged evidentiary error was harmless, "we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done[.]" *McGarity v. State*, __ Ga. __ , n. 2 (1) (856 SE2d 241, 243 (1)) (2021) (quoting *Hampton v. State*, 308 Ga. 797, 802 (2) (843 SE2d 542) (2020).

days, Martin allowed the victim to leave with him, and the two went grocery shopping and to Martin's college to meet with a professor. Despite her desire to end the relationship, the victim told no one about these incidents and did not contact police.

One evening in late February, the victim and Martin watched a movie in her apartment, and the victim allowed Martin to spend the night. The following morning, Martin wanted to have sex with the victim, but she declined, and Martin became angry. Over the next several hours, the two argued, and Martin threatened the victim with knives, forced his penis into her mouth with such force that she vomited, and raped her more than once. After they had sex the first time, Martin dragged the victim by the hair into the bathroom, where he made her shower and cleaned her vagina with a loofah glove. Martin also placed his hands around her throat so tightly that she urinated on herself, and he pressed his thumbs into her eyes. At one point, he told her that they would both die that day, and after the victim suggested they use pills instead of the knife, Martin gave her a handful of Benedryl. But Martin never dropped the knives during the encounter, leaving cuts on her arms and leg.

Eventually, Martin calmed down and they had a discussion about their relationship and how Martin's behavior would cause the victim to lose her job. The victim became angry, and she threw a heavy picture frame at him. Both Martin and

the victim recorded their conversations, in which Martin asked if the victim was his girlfriend, and the victim complained that Martin cut her with a knife and that she was going to get fired from her job due to Martin's behavior. The videos contain no mention of the rape, and they show the victim freely moving about the apartment and toward the door. Shortly after recording themselves, the victim was able to escape while Martin was distracted. After the victim fled, Martin started to chase her until she went to the apartment complex leasing office. While she waited for police, she saw Martin drive away in her car.

The victim spoke with police and recounted the attack. A nurse performed a sexual assault examination, which showed marks on the victim's neck consistent with strangulation, redness at the back of the throat and around her eyes, a missing fingernail, and scratch marks consistent with the use of a knife. She also conducted a vaginal examination, which showed injury in the area, consistent with the victim's complaints. A DNA swab showed Martin's DNA in the victim's vagina. A crime scene technician collected evidence from the apartment, including knives and the remnants of Benedryl pills, a loofah glove and Martin's watch in the bathroom, a broken fingernail, and a broken picture frame. Police also obtained a warrant to search Martin's phone and Kindle, uncovering several videos showing Martin and the

4

victim having sex, and that Martin searched the police department's website for wanted persons the night after the attack.

Thereafter, Martin was indicted for rape, two counts of aggravated assault arising from the use of a knife and his hands to strangle the victim, one count of aggravated sexual battery, and theft by taking of the victim's car.[2]

At trial, the victim testified about the events, and both the police officer who responded to the attack and a detective who interviewed the victim testified to the victim's allegations. The State also presented testimony from a licensed counselor, who explained that abusers use various methods to control their victims, which often leads to physical force or sexual abuse to maintain power and control. According to the counselor, victims avoid calling police because they fear it will make the abuser angry, and they may feel shame or embarrassment about the relationship. She further explained that victims may often try to wean the abuser off as they exit the relationship in order to minimize the danger and appease the abuser, and they may want to return to the relationship or stay in contact with the abuser after they escape.

---

[2] Martin was later re-indicted on the same charges, and the State nolle prossed the first indictment.

The State also submitted portions of the numerous jailhouse phone calls between Martin and the victim following Martin's arrest. In those calls, Martin repeatedly professed his love for the victim, stated he was obsessed with her, asked her not to come to court to testify against him, apologized for the attack, and admitted he made a mistake. In one call, Martin told the victim that he had a problem and "dealt with it the wrong way." In another call, he explained that he went "ballistic" that day when the victim said she did not want to have sex with him, and he admitted pulling her hair and putting her through "trauma." In yet another call, Martin told the victim that her body belonged to him and she could not keep it from him, or somebody was going to "get cut."

The jury convicted Martin of rape; one count of aggravated assault related to the use of the knife; one count of battery, as a lesser included offense of aggravated assault arising from strangulation; aggravated sexual battery; and theft by taking the victim's car. Martin moved for a new trial, raising the same errors he alleges on appeal. Following a hearing, at which Martin's counsel called several witnesses to testify to the victim's motive, the trial court denied the motion for new trial. Martin now appeals.

1. Martin first argues that he received ineffective assistance of counsel due to counsel's failure (1) to call witnesses who would have explained the victim's motive to fabricate the allegations, and discounted her credibility, which was critical to the case; and (2) to object to the detective's hearsay testimony. We are not persuaded.

> To succeed on a claim that counsel was constitutionally ineffective, [Martin] must show both that his attorney's performance was deficient, and that he was prejudiced as a result. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Under the first prong of this test, counsel's performance will be found deficient only if it was objectively unreasonable under the circumstances and in light of prevailing professional norms. And under the second prong, prejudice is demonstrated only where there is a reasonable probability that, absent counsel's errors, the result of the trial would have been different. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Failure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong. And although both the performance and prejudice components of an ineffectiveness inquiry involve mixed questions of law and fact, a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous.

(Citations and punctuation omitted.) *Green v. State*, 302 Ga. 816, 817-818 (2) (809 SE2d 738) (2018). Additionally, when we consider a claim of ineffective assistance of counsel, "the trial court, not this Court, is the judge of witness credibility, and a trial court's denial of an ineffectiveness claim based on conflicting evidence is not clearly erroneous." (Citation and punctuation omitted.) *Hartley v. State*, 299 Ga. App. 534, 538 (2) (683 SE2d 109) (2009); see also *Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014). With these standards in mind, we turn to Martin's claims of ineffective assistance of counsel.

(a) *Witnesses*.

Martin asserts that he was prejudiced by counsel's failure to investigate or call his college professor, a childhood friend, his grandmother, and his fiancee, all of whom would have disputed the victim's claim of an on-going relationship, called the victim's credibility into question, and testified that it was the victim who was controlling and jealous. He contends that he instructed his attorney to contact these witnesses, but the attorney failed to do so.

At the motion for new trial hearing, Martin called each of these witnesses. The professor testified that he met with Martin and the victim at the college in early February, during those same days that the victim alleged Martin had prevented her

8

from leaving her home. At their meeting, the victim seemed supportive of Martin and did not appear anxious or afraid. The professor expected to hear from Martin's attorney but that never occurred. Martin's childhood friend testified that he also saw Martin and the victim together during early February, and the victim admitted that she was jealous and liked to have her boyfriends to herself. Martin's grandmother testified that she lived with Martin and the victim briefly and observed them communicate on a laptop throughout the day when the victim was at work, and the victim spoke to her about jealousy. Finally, Martin's fiancee testified that she was in a relationship with Martin in late 2016 and early 2017, and that the victim was aware of the relationship and knew that Martin planned to move in with the fiancee. She stated that Martin asked her to contact his attorney, which she tried to do several times without success, and she left the attorney a message with the names of the professor and Martin's grandmother as potential witnesses. Martin also testified that he gave these names to his attorney multiple times prior to trial.

Counsel testified that he met with Martin about ten times, and Martin asked him to speak with his mother and grandmother, but did not give him the names of any other witnesses. He had no recollection of receiving a call from Martin's fiancee, and there were no notes in his file with the names of other witnesses. He explained that

9

he did not call other witnesses because he believed he could get the same information from the victim, and that would avoid the risk that another witness might say something damaging on the stand. Counsel noted that his theory of defense was that the victim's allegations were so outlandish as to be unbelievable, and he was able to elicit testimony to discredit the victim, specifically, that she and Martin had engaged in rough sex; she had not reported the time Martin allegedly held her hostage; and there was no evidence of vomit in the apartment after the attack.

The trial court found that counsel made a strategic decision not to call other witnesses, and that counsel elicited the same information during cross-examinations of the other witnesses. The trial court also found counsel's testimony more credible than Martin's testimony. We see no basis to reject the trial court's credibility finding here. Where counsel was not given the names of the potential witnesses, his failure to contact those witnesses is not deficient performance. *Hartley*, 299 Ga. App. at 539 (2).

But regardless of whether counsel's performance was deficient, Martin cannot meet his burden to show that he was prejudiced in light of the overwhelming evidence against him. See *Foster v. State*, 318 Ga. App. 124, 126-127 (733 SE2d 423) (2012). In addition to the victim's testimony, the evidence from the crime scene supported her

10

version of the events, as did the medical evidence of her injuries, and the jury also heard several phones calls in which Martin essentially admitted that he attacked the victim and expressed remorse for his conduct. Additionally, in one of those calls, Martin explained why he had lost control and traumatized the victim. As such, there is no reasonable probability that the witnesses' proposed testimony would have altered the outcome. *Adams v. State*, 350 Ga. App. 340, 346 (3) (d) (829 SE2d 412) (2019) (failure to call witness who could contradict some of victim's allegations did not prejudice defendant in light of overwhelming evidence).

Moreover, in his cross-examinations of the victim and other witnesses, counsel was able to elicit testimony that called the victim's credibility into question, specifically that no vomit was found in the apartment, she had engaged in rough sex with Martin on prior occasions, and she accompanied Martin to his professor's office during the same time frame in which she alleged Martin held her hostage. See *Williams v. State*, 290 Ga. 533, 537 (2) (b) (722 SE2d 847) (2012) (no prejudice where the victim's credibility was otherwise impeached). As a result, Martin cannot show the outcome of his trial would have been different had counsel called these witnesses, and this claim of ineffective assistance fails.

(b) *Hearsay*.

11

Martin next contends that, although counsel objected to the detective's hearsay testimony, he erroneously failed to object to similar testimony from the responding officer, and this testimony constituted improper bolstering. He notes, again, that the victim's credibility was critical to the case and, thus, he was prejudiced by counsel's deficient performance.

At trial, both a police officer and a detective testified to the victim's account of the attack. Trial counsel objected to the detective's testimony as hearsay, but had not raised the same objection to the other officer's earlier testimony. At the motion for new trial hearing, counsel explained that he did not object because the officer's testimony simply reinforced how unbelievable the victim's allegations were, and that he focused on bringing out inconsistencies between the trial testimony and her statements to police.

As the trial court correctly found, this strategic reason was not deficient performance. See *Sullivan v. State*, 301 Ga. 37, 40-41 (2) (a) (799 SE2d 163) (2017). Generally, counsel's decision to forego objecting to hearsay testimony can be reasonable trial strategy. Id.; see also *Williams v. State*, 282 Ga. 561, 564 (5) (a) (651 SE2d 674) (2007). We evaluate the reasonableness of counsel's strategic decision "in conjunction with the attendant circumstances of the challenged conduct with every

12

effort made to eliminate the distorting effects of hindsight. Thus, deficiency cannot be demonstrated by merely arguing that there is another, or even a better, way for counsel to have performed." (Citations and punctuation omitted.) *Richards v. State*, 306 Ga. 779, 782 (2) (a) (833 SE2d 96) (2019). Here, counsel's decision not to object, but to highlight inconsistencies instead was a reasonable trial strategy. Id. at 781-782 (2) (a) (counsel's decision not to object to hearsay that might have bolstered witnesses' testimony was reasonable strategy).

Moreover, counsel's failure to raise this objection did not prejudice Martin. Counsel was able to delve into inconsistencies in the victim's account, such as the absence of vomit in the apartment. And, as noted above, the evidence against Martin was overwhelming. See *Johnson v. State*, 328 Ga. App. 702, 706 (2) (760 SE2d 682) (2014) (erroneous admission of hearsay testimony did not prejudice defendant in light of overwhelming evidence of guilt); *Pilkington v. State*, 298 Ga. App. 317, 320 (1) (b), (c) (680 SE2d 164) (2009) (counsel's failure to object to police officer's testimony regarding credibility of a witness did not prejudice defendant in light of the overwhelming evidence of guilt).

Finally, to the extent that Martin argues that these witnesses' testimony improperly bolstered the victim's credibility, that claim is without merit. "When a

13

witness's statement does not directly address the credibility of another witness . . . there is no improper bolstering." *Brown v. State*, 302 Ga. 454, 460-461 (2) (b) (807 SE2d 369) (2017). Thus, a witness cannot opine whether the victim was telling the truth, but the witness can testify to whether the victim's statement was consistent with other information obtained during the investigation. *Pender v. State*, __ Ga. __ (3) (856 SE2d 302, 317 (3)) (2021). Accordingly, we conclude that this enumeration is without merit.

2. Martin next argues that the trial court erred in allowing the detective to proffer hearsay testimony regarding the victim's allegations that she had vomited when forced to perform oral sex. He contends the testimony would not qualify as a prior consistent statement under OCGA § 24-6-613 (c) because the prior statement did not predate the alleged fabrication.[3] We disagree.

Here, the detective testified that he interviewed the victim, and she stated that she had vomited when Martin forced his penis into her mouth. Counsel objected on

---

[3] We note that the cases Martin cites to show the prior consistent statement must predate the alleged fabrication were decided under the old Evidence Code. But the new Evidence Code applied to Martin's trial, *Bullard v. State*, 307 Ga. 482, 488 (3), n. 6 (837 SE2d 348) (2019), and, as discussed above, the new Code expands the permissible use of such statements.

14

the ground that the statement was hearsay. The State argued that the statement was admissible as a prior consistent statement, and the trial court overruled the objection.

We review a trial court's evidentiary ruling for abuse of discretion. *Bridgewater v. State*, 309 Ga. 882, 886 (2) (848 SE2d 865) (2020). Under our Evidence Code, hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OCGA § 24-8-801 (c). But an out-of-court statement is not hearsay "if the declarant testifies at the trial or hearing, is subject to cross-examination concerning the statement, and the statement is admissible as a . . . prior consistent statement[.]" OCGA § 24-8-801 (d) (1) (A). Under OCGA § 24-6-613 (c),

> [a] prior consistent statement shall be admissible to rehabilitate a witness if the prior consistent statement logically rebuts an attack made on the witness's credibility. A general attack on a witness's credibility with evidence [pertaining to character or prior criminal convictions] shall not permit rehabilitation under this subsection. If a prior consistent statement is offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive, the prior consistent statement shall have been made before the alleged recent fabrication or improper influence or motive arose.

15

Our Supreme Court recently considered this evidentiary rule, explaining that

> [w]hile the final sentence of the Code section effectively codifies our prior decisional law, the first two sentences expand the admissibility criteria to cover prior statements offered to rehabilitate a witness against any attack on a witness' credibility, other than that based on character or prior convictions, so long as the prior statement "logically rebuts" that attack. Reading the Code section as a whole, it is clear that a prior consistent statement will be admissible only if (1) the witness' credibility has been attacked, by some means other than impeachment by evidence of character or prior convictions; and (2) the prior statement "logically rebuts" that attack. Further, if the attack is by a charge of recent fabrication or improper influence or motive, a prior statement may "logically rebut" the attack only if it was made before the alleged fabrication, influence, or motive came about.

(Citations and emphasis omitted.) *McGarity v. State*, __ Ga. __ (3) (856 SE2d 241, 247 (3)) (2021);[4] see also OCGA § 24-6-613 (c); *Walters v. State*, 335 Ga. App. 12, 14 (780 SE2d 720) (2015) (recognizing that under the new Evidence Code, admission

---

[4] In *McGarity*, our Supreme Court noted that a prior consistent statement was not admissible to rehabilitate a general attack on a witness's credibility. *McGarity*, __ Ga. at __ (3), n. 6 (856 SE2d at 248 (3), n. 6). It is a close call in this case whether there was only a general attack on the victim's credibility. But, as discussed infra, any error in admitting the prior consistent statement was harmless.

of a prior consistent statement was not limited to rebutting an allegation of recent fabrication).

Here, the victim testified that she had vomited when forced to perform oral sex, and she was cross-examined on that issue. But counsel did not suggest that she had fabricated that allegation; rather, he simply tried to pin down whether she had vomited once or twice.[5] Counsel elicited testimony from other witnesses that there was no sign of vomit in the apartment. The detective testified that the victim repeated this description of the event in her interview with police immediately after the attack. Counsel's questioning thus implied that the victim's story lacked credibility, and her prior statement was admissible to rebut that implication. *Dorsey v. State*, 303 Ga. 597, 603 (3) (814 SE2d 378) (2018) (prior consistent statement admissible where trial counsel cross-examined witness and implied that witness fabricated his testimony and gave inconsistent statements); *Kendricks v. State*, __ Ga. App. __ (1) (a) (855 SE2d 652, 655 (1) (a)) (2021) (prior consistent statement admissible where trial counsel implied that victim had changed her story, thereby placing her credibility at issue).

---

[5] Opening and closing arguments were not transcribed and thus we do not know to what extent counsel focused on the alleged inconsistency. Compare *Walters*, 335 Ga. App. at 17 (noting that counsel referenced the victim's inconsistency in closing argument).

Even if it was error to admit the detective's testimony, Martin is not entitled to a new trial on this ground because the error was harmless.

> The improper admission of bolstering evidence is a non-constitutional, evidentiary error. Thus, to determine whether such error requires reversal, we must determine whether it is highly probable that the error did not contribute to the jury's guilty verdicts. Where improper bolstering has occurred, this determination must be made without reliance on the testimony that was improperly bolstered, as the very nature of the error is that it is repetitive of that to which the witness has already testified. Instead, we must consider factors such as whether the State's case was based primarily on the bolstered testimony, and whether the improper bolstering added critical weight to that testimony.

(Citations and punctuation omitted.) *McGarity*, __ Ga. at __ (3) (856 SE2d at 249 (3)). Here, the evidence against Martin was overwhelming, with Martin's own admissions in the jailhouse calls that he made a mistake and went "ballistic" that morning, expressing remorse for traumatizing the victim, and asking the victim not to come to court to testify. In light of this overwhelming evidence, the State's case did not depend on the detective's reiteration that the victim had vomited, and the alleged error, if any, did not contribute to the verdict. See id.

18

3. Finally, Martin argues that the cumulative effect of the errors warrants a new trial.[6] "Although we may now consider whether the cumulative effect of errors requires a new trial, if, as here there are not multiple errors, there can be no cumulative error." (Citations and punctuation omitted.) *Jones v. State*, __ Ga. App. __ (855 SE2d 761, 764 (4)) (2021); see also *Crider v. State*, 356 Ga. App. 36, 50 (4) (846 SE2d 205) (2020). Having rejected Martin's individual claims of error, we find no basis for a claim of cumulative error.

For these reasons, the trial court properly denied the motion for new trial, and we affirm.

*Judgment affirmed. Barnes, P. J., and Gobeil, J., concur.*

---

[6] Our Supreme Court has not determined whether non-evidentiary errors can contribute to cumulative error. See *Finney v. State*, __ Ga. __ (3) (a), n. 27 (855 SE2d 578, 588 (3) (a), n. 27) (2021). But we can consider those evidentiary issues and evidentiary claims arising from ineffective assistance of counsel. *Showers v. State*, 353 Ga. App. 754, 761 (2) (d) (839 SE2d 245) (2020).