**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 24, 2024**

# In the Court of Appeals of Georgia

A24A0600. MONTIEL v. THE STATE.

RICKMAN, Judge.

Following a jury trial, Jorge Montiel was convicted on one count of burglary. Prior to trial, Montiel filed a motion to suppress a statement given during a custodial interrogation, asserting that law enforcement unlawfully interfered with his right to counsel, rendering his statement involuntary. The trial court denied the motion after conducting a *Jackson-Denno*[1] hearing. Following his conviction, Montiel filed a motion for new trial based, in part, on the same grounds. The trial court denied that motion upon concluding, in essence, that the suppression of Montiel's statement was not the proper remedy for the violations alleged. Montiel argues on appeal that the trial court

---

[1] 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

erred by failing to suppress the statement and that, without it, the evidence was insufficient to support his conviction. For the following reasons, we affirm.

> In deciding the admissibility of a statement during a *Jackson-Denno* hearing, the trial court must consider the totality of the circumstances and must determine the admissibility of the statement under the preponderance of the evidence standard. To the extent that the controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo. On the other hand, to the extent that legally significant facts were proved by evidence other than the video recording, the trial court as fact-finder was entitled to determine the credibility and weight of that other evidence.

(Citations and punctuation omitted.) *Downer v. State*, 314 Ga. 617, 623 (2) (878 SE2d 537) (2022). We will not disturb the trial court's factual and credibility determinations unless they are clearly erroneous and we review de novo the trial court's application of the law to those facts. See *Acosta v. State*, 311 Ga. 320, 321-322 (1) (857 SE2d 701) (2021).

So construed, the evidence shows that the underlying crime[2] in this case was committed in October 2010, and the local police department requested that the Georgia Bureau of Investigation ("GBI") aid in the investigation. After Montiel's fingerprints were found on a bucket under the window used to access the burglarized home as well as the sill and interior frame of the window itself, Montiel was indicted for the crime and a warrant issued for his arrest.

Eventually, Montiel was arrested in his home country of Mexico, and he was extradited to the United States on the evening of July 17, 2018. On that day, he was transferred into the custody of the GBI agent leading the investigation, then transported and booked into the Forsyth County Jail.

The lead GBI agent testified that she opted not to interview Montiel, who did not speak English, upon his arrival, choosing instead to allow him to sleep after a day of travel. She arranged to conduct a recorded interview the following morning using

---

[2] In addition to the burglary for which Montiel was convicted, the underlying crime in this case included the violent murder and sexual battery of a woman who lived in the burglarized home. Montiel was indicted on, but acquitted of, one count of malice murder, two counts of felony murder, aggravated sexual battery, and a second count of burglary. He was also indicted on one count of aggravated sodomy, but the trial court directed verdict as to that count.

a room at the sheriff's office and scheduled a Spanish-speaking officer to be present to translate.

The following morning, however, Montiel was on the calendar to appear before a magistrate for his first-appearance hearing[3] and, consequently, the law enforcement officers responsible for transporting criminal detainees refused to transport him to the interview. Learning this, an investigator with the Forsyth County District Attorney's Office contacted the clerk of the magistrate court and requested that she remove Montiel from the first-appearance calendar. The clerk did so, and Montiel was thereafter transported to the sheriff's office for the interview.

In the meantime, the duty attorney assigned by the Forsyth County Indigent Defense Office to represent each defendant on the first-appearance calendar, including Montiel, was not informed until after the fact that Montiel had been

---

[3] During a first-appearance hearing, which must be conducted within 72 hours of an arrest made pursuant to a warrant, a judicial officer informs the accused of the charges against him or her; informs the accused of certain rights he or she has in further proceedings, including the right to remain silent and the right to counsel; and sets bail. See Uniform Superior Court Rule 26.1; see also *Taylor v. Chitwood*, 266 Ga. 793, 793 (1) (471 SE2d 511) (1996). Pursuant to a local rule, first appearance hearings in Forsyth County are generally conducted within 24 to 48 hours of an arrest.

removed from the calendar and transported elsewhere. She objected on Montiel's behalf and demanded that he be returned for the hearing, to no avail.

After the attempts to have Montiel returned failed, a trial attorney was appointed to represent him, and the appointed attorney went to the sheriff's office in an effort to consult with him. Montiel was not informed that the attorney was present, and the attorney was not granted access to Montiel until after the interview had concluded. During the interview, Montiel admitted to entering the home to commit a theft, but steadfastly maintained that no one was home when he entered and that he fled as soon as he heard a car pulling into the driveway.

Prior to trial, Montiel filed a motion to suppress the recorded interview,[4] asserting that the State improperly requested he be removed from the first-appearance calendar and otherwise unlawfully interfered with his right to counsel, rendering his statement involuntary. The trial court conducted a *Jackson-Denno* hearing, at the conclusion of which the court determined that Montiel gave his statement freely and

---

[4] Following the interview, law enforcement officers collected buccal swabs from Montiel for DNA testing. Montiel also moved to suppress that evidence, although his DNA was not found on the victim or elsewhere in the house.

voluntarily after being advised of his *Miranda*[5] rights and signing a written waiver of those rights. The court, therefore, denied the motion.

The jury ultimately convicted Montiel on one count of burglary with intent to commit theft. He filed a motion for new trial, which the trial court denied. This appeal followed.

Montiel argues that the trial court erred by denying his motion for new trial based on what he contends was the trial court's error in failing to suppress his confession made during the custodial GBI interview. Specifically, Montiel asserts that the State's unilateral request to remove him from the first-appearance hearing calendar without the consent of his attorney rendered his subsequently-given statement involuntary.

We begin by noting that we, like the trial court, are not being called upon to determine whether anyone involved violated the Rules of Professional Conduct in their dealings with Montiel.[6] Rather, the question before this Court is whether the trial

---

[5] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[6] The trial court noted that the record contained no evidence to suggest that any Rules of Professional Conduct had been violated.

court erred by refusing to suppress Montiel's statement as a remedy for alleged violations related to the first-appearance hearing.

The trial court held, in essence, that even if Montiel's rights were violated by the State's unilateral action in requesting his removal from the first-appearance calendar, suppression of his custodial statement was not the appropriate remedy. In its order denying the motion to suppress, the trial court first noted that any harm resulting from his removal was mitigated by the fact that he was indicted and had an opportunity to seek bail. See generally *Taylor v. Chitwood*, 266 Ga. 793, 793 (1) (471 SE2d 511) (1996) (holding, in the context of a petition for a writ of habeas corpus, that "the failure to hold a timely first appearance hearing provides no basis for release once the defendant has been indicted and had an opportunity to seek bail"). The court then recognized that the remedy for even a total failure to hold a first-appearance hearing is the release from custody, not the suppression of evidence. See generally *State v. Gilstrap*, 230 Ga. App. 281, 282 (495 SE2d 885) (1998) (noting, in the context of a criminal defendant who posted bond without receiving a preliminary hearing, that "the remedy for failing to hold a probable cause hearing within the statutory period is a release from custody, and not a dismissal of the charges").

We recognize that this case is distinguishable from those cited above in that Montiel asserts that his harm lies not in the deprivation of a first-appearance hearing per se, but in the role that the State played in preventing his access to an attorney prior to the GBI interview. Nevertheless, we agree with the trial court that Montiel has failed to establish that any alleged violation results in a suppression of his custodial statement.

Although the assigned duty attorney testified at the *Jackson-Denno* hearing that she would have advised Montiel to assert his right to remain silent had they been provided the opportunity to meet,[7] there was no evidence presented that Montiel would have heeded that advice, which he would have been entitled to disregard. See generally *Downer v. State*, 314 Ga. 617, 627-628 (2) (b) (878 SE2d 537) (2022) (holding that appellant's repeated references to the fact that he was speaking to authorities against the advice of counsel did not render his statement inadmissible). Moreover, prior to questioning, Montiel was fully informed of each of his *Miranda* rights, including the right to remain silent and the right to counsel, and he agreed in writing

---

[7] We will assume, without deciding, that the duty attorney actually represented Montiel as legal counsel despite the fact that they did not have the opportunity to meet prior to his removal from the first-appearance calendar.

to waive those rights. The trial court was authorized to conclude that his waiver was knowing and voluntary and that his statement was freely given. See generally *Taylor v. State*, 304 Ga. 41, 47-48 (4) (816 SE2d 17) (2018) (recognizing that, even if a criminal defendant is represented by counsel, he or she can waive the right to have counsel present during a custodial interview); *Spence v. State*, 252 Ga. 338, 342 (2) (d) (313 SE2d 475) (1984) (rejecting appellant's argument that his Sixth Amendment right to counsel was violated when he was questioned outside the presence of his known counsel because he voluntarily waived his right to have counsel present). In sum, under the unique circumstances presented in this case, the evidence supported the trial court's ruling that even if Montiel's removal from the first-appearance calendar was improper, it did not render his custodial statement involuntary and inadmissible. Cf. *Mace v. State*, 144 Ga. App. 496, 499 (2) (241 SE2d 615) (1978) ("Legality, duration, and conditions of detention are relevant matters for consideration and determination of whether a defendant's statement is voluntary, but nothing . . . require[s] [a] court to find, as a matter of law, that [a] detention[,] even if illegal, rendered defendant's statement coerced and involuntary, therefore inadmissible.")

(punctuation omitted). Accordingly, we affirm the trial court's denial of Montiel's motion for new trial.

*Judgment affirmed. Mercier, C. J., and McFadden, P. J., concur.*